## KENNEDY v. GENERAL GEOPHYSICAL CO. et al.

### No. 12002.

Court of Civil Appeals of Texas. Galveston.

July 22, 1948.

Rehearing Denied Sept. 30, 1948.

708

Kennedy & Granberry, of Crockett, for appellant.

Adams & Morgan, of Crockett, and W. P. Z. German, Jr., of Midland, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellant, C. W. Kennedy, Jr., for the recovery of damages alleged to have been sustained by him by reason of the acts of appellees, General Geophysical Company and Skelly Oil Company in securing information as to the presence or absence of oil, gas or other minerals in and under a tract of 339 acres of land belonging to him in Houston County, Texas, and for an alleged trespass in the form of vibrations caused by explosions of dynamite in conducting geophysical operations in close proximity to appellant's land. He sought exemplary damages by reason of the alleged willful and malicious acts of appellees in conducting such operations and in the securing of such information.

In the trial before the Court, without a jury, judgment was rendered in favor of appellees and that appellant take nothing by his suit.

At the request of appellant the trial court prepared and caused to be filed his findings of fact and conclusions of law in which he found, in substance, on what we deem to be sufficient evidence, that:

Appellee, General Geophysical Company, had been employed by Skelly Oil Company to perform certain geophysical operations for the purpose of securing information relative to sub-surface structure of certain lands in Houston County, Texas;

That these geophysical operations were conducted by boring holes in the ground and placing dynamite or other explosives therein, which were caused to explode; that at various distances from these "shot-holes," receiving instruments called seismometers, or jugs, were placed, which received vibrations caused by the explosions at the "shot-points" and transmitted them through a cable to a recording truck, and that by interpretation of these vibrations the depth points below such receiving instruments were determined;

That appellant was the owner of 339 acres of land in the vicinity of these operations, and on or about August 1, 1947, an agent of appellee General Geophysical Company requested appellant's permission to conduct geophysical operations on his land, and that he was informed by appellant that

he could neither "shoot" his land or the land along the road adjoining his land without paying for the right to do so;

The court found that neither appellees nor their agents or employees went upon or "shot" any part of appellant's land, and that the General Geophysical Company did not place any "shot-point," receiving set, or recording trucks on any part of said land, but that it did "shoot" land near plaintiff's land, one of such "shots" being within 10 or 15 feet of the boundaries thereof, but that on no occasion of such "shooting" did a straight line running from such "shot-point" to a "receiving set" or "jug" cross any part of plaintiff's land; that the shots and receiving sets were placed along or on a public road or highway adjoining the land at distances of 150 feet apart;

The court found that the vibrations received by these receiving instruments or "jugs" go down from the "shot-point" vertically and then back up to such receiving sets or "jugs," and that by the interpretation of these vibrations so received and recorded, information is gotten relative to the depth points under such receiving sets and that no interpretation or geophysical information as to plaintiff's land was given Skelly Oil Company by either the General Geophysical Company or its agents; and that no receiving sets were placed on said land; that the appellees got no reliable information as to the sub-surface structure under appellant's land by reason of the "shooting" and that any information that appellees may have gotten as to sub-surface structure under plaintiff's land would be based on assumption or supposition that the sub-surface structure under plaintiff's land, was the same as that along the road adjacent to the land on which the receiving sets were placed;

The court found that there was no evidence introduced upon the trial as to the extent and intensity of either the horizontal or vertical vibrations emanating from the explorations at the "shot-points" except that the vertical vibrations going straight down and back to the receiving sets were sometimes sufficient to be received by the "jugs" several hundred feet away from the points of "shooting"; and that it is a physical impossibility to control or govern the di-

rection of the vibrations emanating from the explorations at the "shot-point"; that these vibrations extend horizontally and vertically from the points of explosion, and that the extent thereof is governed by the intensity of the explosion, and also by the character of the earth's structure through which the vibrations go;

He found that there was no evidence that appellant suffered any physical damage to his land by reason of the explorations at the point of shooting near his land; and

That neither the General Geophysical Company nor the Skelly Oil Company or their agents acted with malice or were prompted by malice in making the explorations complained of by appellant.

. The trial court found as conclusions of law:

That, there being no evidence of any trespass on plaintiff's land and no evidence of any damage to the physical structure either of the surface or the sub-surface thereunder, appellant was not entitled to recover damages, either nominal or actual;

That the appellees' action in determining by geophysical exploration of land so explored the depth-points under such land, cannot and does not form a basis for appellant's claim for actual damages, since it was not shown that the appellees trespassed on plaintiff's land or in any way injured his land in securing such information;

That the mere fact that appellees conducted geophysical operations on land adjacent to and in the vicinity of appellant's land and thereby obtained information which they considered of value in determining the probable presence or absence of oil, gas, or other minerals under the land explored, cannot form a basis for appellant's claim for the actual damages sought by him, it not being shown that any trespass of appellant's land was committed by appellees, or that any injury was done, to appellant's land by such geophysical operations on adjacent land.

The court found that the appellees were under no legal obligation to disclose to appellant any information obtained by them by reason of the geophysical operations on land that did not belong to appellant, and

that appellant cannot recover for the withholding of such information;

That, it being shown that neither of the appellees in their operations complained of by appellant acted maliciously or were prompted in the acts done by them by malice, plaintiff was not entitled in any event to exemplary damages.

Only two witnesses testified on the trial of the case—appellant C. W. Kennedy and John Clements, an employee of General Geophysical Company, who was the party chief of the exploration truck which conducted the geophysical operation. Mr. Clements testified that by such geophysical explorations they obtained "depth-points" approximately directly beneath the "receiving sets" or "jugs." There is no evidence in the record as to whether any information was secured in reference to the sub-surface structure and/or the problematical presence of oil, gas or other minerals.

Under appropriate points of appeal appellant contends that the trial court erred in finding as a matter of fact that appellees gained no information as to plaintiff's land. He .contends that the court should have taken judicial notice of the scientific fact, in the absence of evidence to the contrary, that the slope, dip or trend of a given subsurface formation continued with the same slope, dip or trend of the last point known, and that the court should have taken judicial notice of the scientific facts that appellees by the geophysical operations acquired information as to the sub-surface formation and the probable presence or absence of oil, gas, or other minerals in and under appellant's land and that such information was a valuable property right for the taking of which plaintiff should be entitled to damages.

There is no evidence in the record that, when a dip or slope of a sub-surface formation is determined in one locality, it will necessarily follow that the same dip or slope continues uniformly under adjoining land, and there is only one reference in the record to the value of information alleged to have been secured by appellees, for which appellant seeks damages, the testimony of appellant that he would not sell that information to his exclusion for $5000.

No testimony or evidence of any nature was introduced by appellant to dispute the statements by Mr. Clements that appellees gained no information in reference to appellant's land, nor was any evidence introduced tending to establish appellant's contention that the trial court should have taken judicial notice of the fact that the slope, or trend of a given sub-surface formation continues with the same slope, dip or trend past the last point definitely known.

In 3 Nichols, Applied Evidence, page 2741, it is said that "* * * Where it is sought to avoid or excuse production of evidence because the fact to be proven is one of general knowledge and notoriety, the test is whether the fact is one of common everyday knowledge in the particular jurisdiction, which everyone of average intelligence and knowledge of things about him can be presumed to know, and whether it is certain and indisputable."

In 17 Tex.Jur., page 17, it is said that: "The matter as to which judicial notice is taken is one of fact. But judicial notice implies the absolute truth of the fact known, and such fact being undisputed, its effect becomes a matter of law."

At page 171 of the same volume, it is said: "Care must be taken that the requisite notoriety exists, and every reasonable doubt on the subject should be resolved in the negative."

In 31 Corpus Juris Secundum, Evidence, § 76, pages 659 and 660, it is said: "Judicial notice will be taken of scientific facts known to all men of ordinary understanding and intelligence, or distinctly recognized in a domestic public statute; but such notice will not be taken of facts which, if known at all, are known only by a specially informed class of persons."

Under the above authorities, the trial court could not, we think, have taken judicial notice of the scientific fact that the slope, dip or trend of a given sub-surface formation continued with the same slope past the last point definitely known. Further we think that appellant wholly failed to sustain his burden of proof that the appellees, by the use of seismograph operations,

obtained information regarding the sub-surface structure or the presence or absence of oil, gas or other minerals in or under appellant's land, and, appellant having made the gaining of such information an indispensable element of his cause of action, his failure to make proof of his allegations with regard thereto renders the question irrelevant.

And the trial court, we think, correctly concluded that no trespass was committed upon appellant's land.

In discussing the question as to whether concussive waves transmitted into the lands of another constitutes a legal wrong and a trespass, it is said in 63 Corpus Juris, page 898, that:

"Trespass may also be committed by shooting onto or over the land, by explosions, by throwing inflammable substances, by blasting operations, by discharging soot and carbon, but not by mere vibrations."

In the case of New York Steam Company v. Foundation Company, 123 App.Div. 254, 108 N.Y.S. 84, 90 (reversed on other grounds, 195 N.Y. 43, 87 N.E. 765, 21 L.R.A.,N.S., 470), it is said:

"The judgment cannot be sustained upon the theory of trespass. Nothing was thrown upon or against the property of the plaintiff which would justify a recovery upon the theory of trespass without negligence. * * * The case in my opinion falls within the doctrine of Holland House Company v. Baird, 169 N.Y. 136, 62 N.E. 149, et cetera, where it is held that in the absence of negligence there is no liability for consequential damages incidently resulting from the vibrations of the earth or air caused by the construction of a lawful improvement either in a public street or upon private property."

In 35 Corpus Juris Secundum, Explosives, § 8, page 239, it is said:

"By some authorities the rule imposing liability for injuries occasioned without negligence is limited to cases of direct injury, and negligence must be established to impose liability for consequential injuries, as by concussion or vibration, to property * * *."

On page 240 of 35 C.J.S., Explosives, § 8, it is said:

"Mere concussion of the air without other injury will not impose liability where blasting is lawfully conducted."

In Hieber v. Central Kentucky Traction Company, 145 Ky. 108, 140 S.W. 54, 55, 56, 36 L.R.A., N.S. 54, it is said:

" 'Blasting upon one's own premises or upon the premises of another, with permission of the owner, if necessary for the improvement thereof, is not an unlawful act. Such blasting necessarily causes vibration of the earth and air to a greater or less extent. Such vibrations cannot be confined within inclosed limits. Hence it must follow that if rightfully and not negligently caused, even though consequential injuries result therefrom, the sufferer is without remedy. (Citing authorities) * * *.'

"It has been held that blasting which causes unpleasant concussions of the air and shaking of the ground, rendering adjoining property untenable, is a nuisance for which damages may be recovered. (Citing authorities) On the other hand, the general rule is that one engaged in blasting on his own property is not liable for mere concussion of the air not resulting in actual injury. Thus in Bessemer Coal, Iron & Land Co. v. Doak, 152 Ala. 166, 44 So. 627, 12 L.R.A.,N.S., 389, the court said: 'We think that, according to the best-considered decisions, the rule is that if one, in blasting upon his own lands, invades the premises of his neighbor, by throwing stones and debris thereon, he is liable for the resulting injury; but for any other injury, such as may result from the mere concussion of the atmosphere, sound or otherwise, there is no liability, unless it is shown that the work was done negligently, and that the injury was the result of negligence, and not the result of blasting according to the usual methods and with reasonable care.' "

In 4 Summers, Oil and Gas, § 661, at pages 68 and 69, it is said:

"It is submitted, therefore, that where one explodes a charge of dynamite to test his land for oil and gas purposes and thereby causes the earth to vibrate and as a proximate result of such vibration the personal property of a neighboring owner is injured, such injury should be compensated in damages. Taking into consideration the fact

that the use of explosives is positively necessary for the discovery of mineral structure by this method (seismic exploration), that such operations are not continuous, and that damage by vibration is of occasional occurrence, a court should not enjoin the use of the seismograph but leave the injured party to his remedy in damages.

"It is unnecessary to place this liability for damage upon the ground that the explosives used in their nature or their use are inherently dangerous. Such a theory is only necessary to overcome the necessity of showing negligence in keeping explosives or establishing their use in certain localities as a nuisance per se. Nor does it seem advisable to attempt to base the liability upon the theory that the vibration amounts to an actual physical trespass. To constitute trespass there must be an entry upon the land. In many cases of injury by vibration the physical invasion might well be considered an entry upon the land, but certainly every vibration of a neighbor's land is not a trespass. Where is the line to be drawn? If at the point where the vibration causes appreciable physical injury, such a line coincides with the actor's liability for consequential injury."

In the case of Comanche Duke Oil Company v. Texas Pacific Coal and Oil Company, Tex.Com.App., 298 S.W. 554, 560, the court in summarizing the law of this State with regard to the question under consideration in this appeal said:

"In a sense, one tract of land cannot be used unless there be also consequential user of neighboring tracts. This is sequent of that delicate relationship which Nature has imposed upon the tangible and intangible constituents of earth and air. There are ever present transmitters whereby a force set in motion on or in one tract may be, and probably will be, carried onto or into vicinal tracts. Ownership includes those tangibles and intangibles separately viewed and taken, also, as a congeries of related units. There may be an exceptional case of user of one tract unaccompanied by stirring of a force to be thus transmitted, but in most cases there will be a force set in motion, which, at the behest of natural laws, will communicate itself to the adjoining tract and, pro tanto, cut down a neighbor's possession and

enjoyment. * * * If the purpose be lawful, physical trespass absent, primary use reasonable, and manner of that use duly careful, consequences are damnum absque; otherwise, injury within proximate causation is redressable. This would appear to have support in "blasting" and "explosion" cases (see Ft. Worth & D. C. R. Co. v. Beauchamp, 95 Tex. 496, 68 S.W. 502, 58 L.R.A. 716, 93 Am.St.Rep. 864; 11 R.C.L. 673, 674; 19 Cyc. 7, 8), in which liability for injuries produced through vibration and shock alone is made to turn upon use or omission of due care in starting the vibrative or concussive waves, * * *."

In the case of Universal Atlas Cement Company v. Oswald et ux, Tex.Civ.App., 135 S.W.2d 591, 593, affirmed 138 Tex. 159, 157 S.W.2d 636, it is said:

"There is a conflict of authority as to whether one, who by blasting by powerful explosives produces severe concussions or vibrations in surrounding earth and air and so materially damages property belonging to others, is liable, irrespective of negligence on his part. All authorities hold that where there is an actual invasion of the premises of another by the throwing of dirt, stone or debris, proof of negligence is unnecessary to a recovery of damages. Others hold that in the absence of an actual physical invasion of the premises, no recovery can be had unless negligence is shown. 22 Amer.Jur. 180; 25 C.J. 192. There are some cases in Texas which seem to support this latter view. Comanche Duke Oil Co. v. Texas Pacific Coal and Oil Co., Tex.Com.App., 298 S.W. 554; City of Dallas v. Newberg, Tex.Civ.App., 116 S.W.2d 476. This theory seems to have some reasonable foundation in those cases where the damage or annoyance is caused solely by noise or concussion of the air, for in those cases there is in fact no physical invasion of the premises; * * *."

■ It is the established law in this State that where a case has been tried without a jury and there was ample evidence in the record to support the findings of the trial court, such findings have the same force and effect as a verdict of the jury on the facts found, and a reviewing court must affirm the trial court's judgment in the absence of other substantial error. Carpen-

ters and Joiners Union of America, Local No. 213 et al. v. Ritter's Cafe et al., Tex.Civ. App., 149 S.W.2d 694, writ of error refused, affirmed by Supreme Court of U. S., 314 U.S. 595, 62 S.Ct. 111, 86 L.Ed. 480; Id., 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143, and cases there cited.

In the instant case the trial court found on what we deem to be ample evidence that appellees were in no way negligent in their operations; that on no occasion did General Geophysical Company set up a receiving set so near appellant's land that a straight line drawn on the surface of the ground from the one shot-point from which waves were to be received by the receiving set crossed any part of plaintiff's land.

The trial court further found that neither the appellees nor their agents acted with malice or were prompted by malice. Appellant was, therefore, not entitled to exemplary damages, since exemplary or punitive damages may only be recovered in an action of trespass where actual damage has been sustained. 41 Tex.Jur., P. 438; McCarthy v. Miller, Tex.Civ.App., 57 S.W. 973.

It follows from these conclusions that the judgment of the trial court must be in all things affirmed. It is so ordered.

Judgment affirmed.