Juan O. VILLARREAL and Maria E. Villarreal, Appellants

v.

GRANT GEOPHYSICAL, INC., Grant Geophysical Corp., and Millennium Seismic, Inc., Appellees.

No. 04–03–00541–CV.

Court of Appeals of Texas, San Antonio.

March 24, 2004.

David W. Dodge, Michael C. Dodge, Paul A. Bezney, Dodge, Anderson & Jones, P.C., Dallas, Ana Lisa Garza, G. Allen Ramirez, Judith O. Pena, Ramirez & Garza, L.L.P., Rio Grande City, Jon W. West, Law Office of Jon W. West, Richmond, Carl D. Rosenblum, David Radlauer, Tara Richard, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for appellants.

Jorge C. Rangel, Steven Schiwetz, Jon D. Brooks, The Rangel Law Firm, P.C., Corpus Christi, Baldemar Garza, Law Office of Baldemar Garza, Rio Grande City, Neil E. Norquest, Chris A. Brisack, Norquest & Brisack, L.L.P., McAllen, Norton A. Colvin, Jr., Rodriguez, Colvin & Chaney, L.L.P., Brownsville, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

In this appeal we are asked to hold that acquisition of geophysical data through

three-dimensional testing constitutes trespass even if there is no physical entry on the surface of the land in question. Texas law, however, requires actual physical entry in order to sustain a claim of geophysical trespass. Accordingly, we decline the invitation to eliminate the physical entry requirement, and we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants, Juan and Maria Villarreal, own mineral estates in southern Starr County, Texas. Appellees, Grant Geophysical, Inc., Grant Corp. (collectively "Grant"), and Millennium Seismic, Inc. ("Millennium"), conduct seismic surveys in Texas using three-dimensional technology. Grant and Millennium conducted three-dimensional surveys in Zapata, Jim Hogg, and Star Counties, collectively called the "Tri–County Speculative 3–D Seismic Survey." The Tri–County Survey covered approximately 300 square miles, and included within its borders property owned by the Villarreals. While conducting this survey, Grant obtained permission to conduct survey operations from over 2,100 surface and mineral estate owners, paying almost four million dollars in permit fees. Grant admits that despite its efforts, it was unable to obtain permission from everyone within the survey; it did not obtain permission from the Villarreals. In order to avoid trespassing on approximately 125 tracts where permits were not originally obtained, including the Villarreals' property, Grant reconfigured the survey. Thus, Grant never trespassed on the surface estate above the Villarreal mineral estate, and Grant contends, it never intentionally obtained unpermitted data from the subsurface of the Villarreals' property.

After completion of the Tri–County Survey, the Villarreals filed suit against Grant and Millennium, alleging that both compa-nies acquired data from the mineral estates without first obtaining their permission to conduct seismic testing on their mineral estates. The Villarreals filed claims for geophysical trespass, assumpsit in lieu of geophysical trespass, and unjust enrichment. The trial court granted summary judgment in favor of Grant and Millennium on all of the Villarreals' claims. The Villarreals now appeal the trial court's summary judgment ruling, as well as the court's ruling denying certain discovery. We affirm.

## THREE–DIMENSIONAL SEISMIC EXPLORATION

The process of three dimensional seismic exploration consists of placing "shot" and "receiver" points on the earth's surface and then using energy sources (vibrioses or explosives) to send vibrations into the earth. In a two dimensional survey, shot and receiver points are arranged in a linear formation, whereas in a three dimensional survey, shot and receiver points are typically arranged in a grid pattern.

Although Grant placed shot and receiver points only on permitted tracts, Grant claims it is unavoidable that some pieces of information are collected from unpermitted mineral estates within survey boundaries if there are receivers set up on more than one side of the unpermitted mineral estate. In order to avoid collection of unpermitted data, Grant states that it would have to place the shot and receiver points further away and lose an opportunity to obtain information from a permitted estate that happens to border an unpermitted estate.

Once this seismic data is processed, it is possible to detect if the recorded energy points came from a non-permitted or permitted tract. The agreement for the Tri–County Survey between CNG Producing Company, Cabot Oil and Gas Corp., Millennium, and Grant provided that data

from unpermitted tracts would be excluded; therefore, Grant deleted information from more than 125 tracts when it licensed the seismic information to third parties. Grant admits, however, that a third party mistakenly delivered the unpermitted data to two of their clients. When the mistake was discovered, the clients were notified, the data was returned, and new data was given to the clients without any adjustment in the purchase price.

## DISCUSSION

The Villarreals argue that Grant and Millennium are liable for damages for geophysical trespass, recovery under assumpsit in lieu of geophysical trespass, and unjust enrichment. Therefore, they contend that the order granting Grant and Millennium's motion for summary judgment should be reversed.

### Standard of Review

A party may move for summary judgment alleging that there is no evidence supporting one or more essential elements of a claim on which the adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). Basically, the "purpose of a no-evidence summary judgment motion is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Benitz v. The Gould Group*, 27 S.W.3d 109, 112 (Tex.App.-San Antonio 2000, no pet.). In reviewing a no evidence summary judgment, we apply the same review as we do in a directed verdict. *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 894 (Tex.App.-San Antonio 2002, no pet.). The reviewing court looks at the "evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences." *Id.; Benitz*, 27 S.W.3d at 113.

A summary judgment based on no evidence should not be granted if the non-movant responds with more than a scintilla of probative evidence, thereby raising a genuine issue of material fact. *Id.; see* TEX.R. CIV. P. 166a(i). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Roberts v. Lain*, 32 S.W.3d 264, 268 (Tex. App.-San Antonio 2000, no pet.) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)).

### Geophysical Trespass and Assumpsit Recovery

 The Villarreals claim the trial court erred in granting Grant and Millennium's summary judgment motion on geophysical trespass and recovery under assumpsit. Trespass under Texas law does not have to be committed in person, but may be caused by allowing or causing something to cross a boundary. *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 416 (1961). In addition, trespass under Texas law includes subsurface trespass as in the oil and gas context. *Id.* When analyzing subsurface trespass involving geophysics such as seismic testing of a mineral estate, the following three cases are key: *Kennedy v. General Geophysical Co.*, 213 S.W.2d 707 (Tex.Civ. App.-Galveston 1948, writ ref'd n.r.e); *Phillips Petroleum Co. v. Cowden*, 241 F.2d 586 (5th Cir.1957) (*Cowden I*); *Phillips Petroleum Co. v. Cowden*, 256 F.2d 408 (5th Cir.1958) (*Cowden II*).

The *Kennedy* case involved seismic testing and trespass, holding that there was no

trespass since appellee did not physically trespass upon or injure the Kennedy land. *Kennedy,* 213 S.W.2d 707, 709, 711. The appellee, General Geophysical Company ("General"), "shot" the neighboring land with seismic with some of his shot/receiver points within ten or fifteen feet of the Kennedy land. *Id.* at 709. In discussing the effect of vibrations trespassing over boundaries the court noted:

> Trespass may also be committed by shooting onto or over the land, by explosions, by throwing inflammable substances, by blasting operations, by discharging soot and carbon, but not by mere vibrations.

*Id.* at 711 (quoting 63 Corpus Juris page 898). Therefore, without physical entry or injury upon the Kennedy's surface estate, there was no geophysical trespass. *Id.* at 709, 711.

Similarly, the Fifth Circuit found geophysical trespass only after finding there was a physical trespass on the surface estate. *Cowden I,* 241 F.2d 586, 592, 594. The district court held that appellant, Phillips Petroleum Company ("Phillips"), committed trespass on the Cowdens' mineral estate by taking a seismograph survey of their land. *Id.* at 588. The Cowdens owned 2,682 acres and Phillips conceded that it "occupied" approximately 81 of those acres since vibrations were theoretically reflected and received from those 81 acres. *Id.* at 589. The Cowdens were able to recover under assumpsit since Texas permits a landowner to waive the claim of trespass and sue for the reasonable value of the use and occupation of the land under assumpsit.[1] *Id.* at 592. This option is pertinent to a geophysical trespass when there may not be any actual damages to one's property. *See id.*

The court in *Cowden I* stated that the mineral estate owners can claim compensation only for the area "occupied" by the exploration. *Id.* at 593. If the mineral estate owners owned area surrounding the "occupied" area, but not the "occupied" area itself, then they would not be able to claim any compensation at all. *Id.* Therefore, the court will look only to the "occupied" area and will not be concerned with neighboring areas where information might also have been revealed. *Id.* "Occupied" area is that which is "reasonably regarded as 'occupied' by the survey (including, but not restricted to, the areas from which vibration echoes were actually received) . . ." *Id.* at 594. Therefore, since the district court included all 2,682 acres as part of the trespassed land, the Fifth Circuit reversed the judgment and remanded the cause back to the district court to determine the amount of trespassed acreage under their analysis of "occupied" area. *Id.*

After remand, the district court arrived at the same amount of trespassed acreage as before (all 2,682 acres), whereupon there was another appeal to the Fifth Circuit. *Cowden II,* 256 F.2d 408. Affirming the judgment of the district court, the Fifth Circuit reiterated the Texas law that "the mineral estate owner may sue a 'geophysical trespasser' for trespass on the mineral estate as a result of a reflection seismograph survey on lands containing the estate." *Id.* at 409. In following the

---

1. As mentioned in *Cowden I,* recovery under assumpsit for trespass is a viable option in Texas. *Estes v. Browning,* 11 Tex. 237, 1853 WL 4433, at *1, 6 (1853); *Harrell v. Vahlsing,* 248 S.W.2d 762, 772–773 (Tex.Civ.App.-San Antonio 1952, writ ref'd n.r.e.). The injured party may either recover for the actual injury, or under an implied contract basis for the use and occupation of the land. *Harrell,* 248 S.W.2d at 773. In determining the value for the use and occupation of the land, courts have used a reasonable market value measure. *Cowden I,* 241 F.2d at 592–93; *Harrell,* 248 S.W.2d at 773.

definition of "occupied," the district court found Phillips liable for the market value of the use of the 2,682 acres of the Cowden mineral estate upon which Phillips trespassed. *See id.* Thus, just as the *Kennedy* court stated, the Fifth Circuit found geophysical trespass after finding a physical invasion of at least some of the surface estate.

In looking at the evidence in the light most favorable to the Villarreals, disregarding all contrary evidence and inferences, summary judgment as to the geophysical trespass and assumpsit recovery claims was proper. There is no dispute about the fact that neither Grant nor Millennium physically invaded or injured the surface estate lying above the Villarreal's mineral estate; thus there was no trespass. Although it appears that Texas law regarding geophysical trespass has not kept pace with technology, as an intermediate court we must follow established precedent. Accordingly, we hold that summary judgment was proper.

### Unjust Enrichment

■■■ A person is unjustly enriched when he obtains a "benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. *Bransom v. Standard Hardware, Inc.,* 874 S.W.2d 919, 927 (Tex. App.-Fort Worth 1994, writ denied). Unjust enrichment occurs when the "person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." *City of Corpus v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247, 250 (Tex.App.-Corpus Christi 1987, writ denied). " 'Unjust enrichment' characterizes

the result or failure to make restitution of benefits received under such circumstances as to give rise to implied or quasi-contract to repay." *Allen v. Berrey,* 645 S.W.2d 550, 553 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.). It has also been said that recovery under unjust enrichment is an equitable right and is not dependent on the existence of a wrong. *Bransom,* 874 S.W.2d at 927.

■■■ The Villarreals argue that Grant and Millennium took undue advantage of them by intentionally acquiring seismic data of their mineral estate. In addition, the Villarreals claim that Grant and Millennium then profited from this unpermitted data at the expense of the Villarreals. However, since a trespass did not occur under current Texas law, Grant and Millennium did not wrongfully secure a benefit nor did they passively receive one which would be unconscionable to retain. Although the facts according to the Villarreals may seem unfair, "[u]njust enrichment is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant" or because the other person received a windfall. *Heldenfels,* 832 S.W.2d at 42 (quoting *Austin v. Duval,* 735 S.W.2d 647, 649 (Tex.App.-Austin 1987, writ denied)).

### Conclusion

After viewing the evidence in the light most favorable to the Villarreals, and disregarding all contrary evidence and inferences, we affirm the trial court's order granting summary judgment in favor of Grant and Millennium.