# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-18-00526-CV

**Thomas Kam, Appellant**

**v.**

**Badruddin Karedia, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-16-007167, THE HONORABLE TODD T. WONG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Thomas Kam, acting pro se, appeals from the county court's judgment that granted directed verdict in favor of Badruddin Karedia.[1]  For the following reasons, we affirm.

## Background

In May 2014, Tony Hardt, who was the general contractor on a construction project in Liberty Hill, Texas (the property), entered into an oral contract with Kam, in which Hardt agreed to pay Kam to perform engineering services for the roof system on the project.

---

[1] We hold Kam to the same standards as licensed attorneys and require him to comply with the applicable laws and rules of procedure. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam).  To do otherwise would give pro se litigants an unfair advantage over litigants represented by counsel. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978).  We do, however, construe the issues raised in Kam's brief liberally. *See* Tex. R. App. P. 38.9; *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.).

Kam completed the engineering services, providing drawings for the roof to Hardt in May 2014, and sent an invoice in November 2014 to Hardt and Karedia, the owner of the property, in the amount of $2,500. Pursuant to a written contract between Karedia and Hardt,[2] however, Karedia already had paid Hardt the full amount owed to him for the project in May 2014, but Hardt had not completed the project, and, at some point in the summer of 2014, Karedia did not have further contact with Hardt.[3]

After Kam did not receive payment for the invoiced amount from Karedia or Hardt, Kam filed suit in justice court against them. He sought payment of $2,500 for "unpaid invoice for engineering services." Kam did not obtain service of process on Hardt, and Hardt did not enter an appearance in the case.[4] After the justice court ruled in favor of Karedia, Kam appealed to the county court, and the case was tried to a jury. The two witnesses to testify at trial were Kam and Karedia. The exhibits included the written contract between Karedia and Hardt; proof of payments from Karedia to Hardt;[5] Kam's drawings; and emails exchanged among Karedia, Hardt, and Kam. After Kam rested, Karedia moved for directed verdict on the grounds

---

[2] Tony Hardt entered into a written contract with Karedia in June 2013, in which Karedia agreed to pay a sum certain to Hardt, and Hardt agreed to act as the general contractor on the construction project. Karedia owned the property and gave the "whole project, including all the design and everything" to Hardt.

[3] Karedia testified that he did not remember the "exact date but maybe August or July or something [of 2014]" in response to the question "when was the last time that [he] actually had contact with [Hardt]." Evidence at trial showed that Karedia paid Hardt around $350,000, and Karedia testified that he paid "100 percent" of Hardt's bill.

[4] Hardt is not a party on appeal.

[5] The payor of the checks was Nakiba Enterprises, Inc. In his answer and verified denial, Karedia alleged that he was acting as the agent of Nakiba Enterprises when he contracted with Hardt.

2

that there was no privity of contract between Kam and Karedia and that quantum meruit did not apply. The county court granted directed verdict for Karedia, and this appeal followed.

## Analysis

In the section of his brief titled "Issues for Review," Kam argues that "[t]his is a case of unjust enrichment and quantum meruit" and that Karedia "failed to pay 'any one' for revised roof design services which he requested, used, and received great benefit from."[6] Kam argues that Karedia did not pay Hardt or Kam for the "revised roof design" that Kam provided and requests that this Court render judgment awarding him $2,500 for his services and reimbursement of his court costs.[7]

### Standard of Review

A directed verdict for a defendant may be proper "when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" or "if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

---

[6] Karedia testified at trial that Hardt provided the "wrong trusses"—metal ones and not steel ones—which required further design work; that Hardt did not ask for additional money for the redesign; and that Karedia had "already paid [Hardt] for the professional fee." Kam testified that Karedia "wanted to have a new roof system, a new bar joist system with bar joist and steel beams and not the light gauge steel trusses that [Hardt] had actually bought, purchased, and delivered to the site."

[7] As a preliminary matter, Karedia asks this Court to dismiss Kam's appeal without considering his issues because Kam filed his appellant's brief on January 18, 2019, and not on January 14, 2019. This Court granted Kam's motion for extension of time and filed his brief. We decline to revisit this ruling.

3

We review a trial court's directed verdict de novo. *John v. Marshall Health Servs., Inc.*, 91 S.W.3d 446, 450 (Tex. App.—Texarkana 2002, pet. denied). When reviewing a directed verdict based on insufficiency of the evidence, we apply the legal sufficiency standard of review. *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *see also Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 220 (Tex. 2011) (describing standard of review of directed verdicts); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 823, 827–28 (Tex. 2005) (stating standard of review for legal sufficiency and explaining that test is same for directed verdicts, summary judgments, and appellate no-evidence review). While we view the evidence in the light most favorable to Kam, it was Kam's burden at trial as the plaintiff to plead the basis of his claims for relief and then submit evidence to create a fact issue on each element of those claims. *See Exxon Corp.*, 348 S.W.3d at 220 (explaining that appellant court views evidence in light most favorable to person appealing from directed verdict and decides whether "there is any evidence of probative value to raise an issue of material fact on the question presented"); *see also* Tex. R. Civ. P. 47 (stating pleading requirements for claims for relief).

With these well-established standards of review in mind, we turn to Kam's arguments that are premised on quantum meruit and unjust enrichment.

**Quantum Meruit**

"Quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received." *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 402 (Tex. App.—Dallas 2006, no pet.) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *see Truly v. Austin*, 744 S.W.2d 934, 936–37 (Tex. 1988)

4

(discussing when plaintiff is permitted to recover in quantum meruit). The elements of a quantum meruit claim require proof that:

> 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985) (internal quotation and citation omitted). To satisfy the second element, it is not enough that a plaintiff's efforts benefit the person from whom he seeks damages; they must have been undertaken "*for* the person sought to be charged." *Truly*, 744 S.W.2d at 937 (citing *Bashara*, 685 S.W.2d at 310).

If an express contract covers the services or materials at issue, recovery under quantum meruit generally is prohibited. *Id.*; *Gentry*, 188 S.W.3d at 402–03; *see Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462–63 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (noting that general rule that "presence of an express contract bars recovery under quantum meruit" "not only applies when a plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also when a plaintiff is seeking to recover 'from a third party foreign to the original but who benefitted from its performance'" (quoting *Hester v. Friedkin Cos.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied))). A plaintiff, however, may recover the reasonable value of services rendered and accepted if "the services rendered and accepted are not covered by the contract." *Gentry*, 188 S.W.3d at 403 (citing *Truly*, 744 S.W.2d at 936–37); *see Galliford*, 254 S.W.3d at 462 ("A plaintiff seeking to recover the reasonable value of services rendered or materials supplied is precluded from recovering in quantum meruit if there is an express contract *that covers those services or*

*materials* and no exception to the general rule applies.").[8]  Kam appears to seek relief from this Court on this basis.

Kam argues that the services he provided—"redesign" of the roof—were not covered by the contract between Karedia and Hardt and that Karedia did not pay Hardt or Kam for those services.  As support for this position, Kam relies on Karedia's email to Kam in November 2014, asking him:  "can you please check attach file and give advice."  Kam also argues that, in his testimony, Karedia "confirmed he never paid Hardt for the roof redesign effort" and "asked Hardt to initiate the process to redesign the roof for steel beam and bar joists"; and that "[t]he only interpretation of the role of Hardt can be that he was acting as a 'agent' for [Karedia] to achieve the requested roof design."  Further, Kam focuses on evidence that he provided his drawings after the last payment from Karedia to Hardt had been made in May 2014.

We begin by observing that Kam's pleaded claim to the county court was a breach of contract claim—he sought to recover $2,500 based on an "unpaid invoice for engineering services."  Consistent with his pleaded claim, Kam's position to the county court was—and the evidence was undisputed—that Kam had an oral contract with Hardt to provide the drawings for the roof system in exchange for a quoted price.  *See Truly*, 744 S.W.2d at 937; *Galliford*, 254 S.W.3d at 462–63; *see also Lopez v. Bucholz*, No. 03-15-00034-CV, 2017 Tex. App. LEXIS 3071, at *17 (Tex. App.—Austin Apr. 7, 2017, no pet.) (mem. op.) (stating elements of valid oral contract).  Kam testified about the agreement that he reached with Hardt to provide engineering services, and he conceded that he did not have a contract with Karedia and that the

---

[8]  Kam has not asserted that any of the exceptions to the general rule apply.  *See Truly v. Austin*, 744 S.W.2d 934, 936–37 (Tex. 1988) (discussing exceptions to general rule that express contract bars recovery under theory of quantum meruit).

6

November 2014 email from Karedia to him was not a contract.[9]  Further, although Karedia had a copy of Kam's drawings, Karedia testified that he obtained the drawings from Hardt, and Kam did not provide controverting evidence.

---

[9] During direct examination, Kam testified:

In May of 2014 on or about May 14th, I got a call from Tony Hardt and he said he was a contractor for the Boomers in Liberty Hill.  And he said that he had provided steel trusses for that project and delivered them to the site and the owner did not want the steel trusses that were delivered.  There was, apparently, a miscommunication at the time of the contract and, apparently, there were no drawings.  Just a written texted contract.  And so Tony said that the owner wanted to have a new roof system, a new bar joist system with bar joist and steel beams and not the light gauge steel trusses that Tony had actually bought, purchased, and delivered to the site.

And that was on May 14th.  And then on May 22nd, I got another e-mail from Tony that gave me -- let me back up a second.  On the May 14th, I did give Tony a quote for the design drawings for that new work.  On May 22nd, Tony sent me another e-mail that gave a layout of the Boomers that would assist me in the design.  On May 23rd, Tony sent me an e-mail requesting what the owner had wanted a roof system.  And I received that on May 23rd, and I told him that the roof system that we had quoted would be comparable to this.  And at that time, Tony said go ahead and just do the design.  By May 29, 2014, we produced a set of drawings.

*Lopez v. Bucholz*, No. 03-15-00034-CV, 2017 Tex. App. LEXIS 3071, at *17 (Tex. App.—Austin Apr. 7, 2017, no pet.) (mem. op.) ("The elements of a valid oral contract are (1) an offer, (2) an acceptance in strict compliance with the terms of an offer, (3) a meeting of the minds, (4) a communication that each party consented to the terms of the contract, and (5) consideration.").

Kam also testified that he had an oral contract with Hardt during cross examination:

Q. Now, Mr. Kam, you entered into an agreement with Mr. Hardt; is that correct?
A. He's the one that made the initial call, yes.
Q. Did you ever enter into a written contract with Mr. Hardt?
A. No.

    ***

7

Thus, the evidence—particularly Kam's testimony—conclusively proved that Kam's services were not undertaken "for the person sought to be charged"—Karedia—but for Hardt and that an express contract—the contract between Kam and Hardt—covered those services.[10] *See Truly*, 744 S.W.2d at 937; *Galliford*, 254 S.W.3d at 462; *Gentry*, 188 S.W.3d at 403; *see also Lopez*, 2017 Tex. App. LEXIS 3071, at \*21–24 (explaining that evidence raised fact issue as to quantum meruit claim because there was evidence that subcontractor performed "extra work" at owner's direction without involvement of contractor, who averred that he "had 'no involvement in directing or agreeing to pay' for the extra work"); *see City of Keller*, 168 S.W.3d at 815 (observing that undisputed evidence may become "conclusive when a party admits it is true").

Based on our review of the evidence, we conclude that Kam failed to present evidence to raise a fact issue essential to his right of recovery under quantum meruit—the

---

Q. . . . So the only way that you could have a contract with Hardt is either in writing or verbally; is that correct?
A. Yes.
Q. And you chose the verbal way, right?
A. Yes.

   \*\*\*

Q. Okay. So what we got here then, in sum, Mr. Kam, is you went ahead and wound up doing an oral agreement with a person [Hardt] that you never worked with before that you now find out is a crook, right?

A. Well, I can't prove the last part but the first part of your phrase is correct.

[10] Consistent with his position to the trial court, Kam expressly states the terms of his agreement with Hardt in his briefing to this Court. In his recitation of the facts, Kam states that he told Hardt "that [his] fee for structural drawings and shop drawing review would be $2,500 for the redesigned roof system"; that Hardt "authorized [him] to produce the drawings"; and that he "completed the drawings for the roof redesign and provided them to Tony Hardt."

evidence was undisputed that Kam undertook "'redesign' of the roof" for Hardt pursuant to an express contract between Kam and Hardt. *See Prudential Ins.*, 29 S.W.3d at 77 (observing that directed verdict is proper when "plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" and when "plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action"); *see also Galliford*, 254 S.W.3d at 459, 462–63 (concluding that exceptions did not apply to allow subcontractor to recover under theory of quantum meruit from owner who hired contractor to construct restaurant and that trial court erred by entering judgment premised on quantum meruit). Thus, Kam has not demonstrated based on a theory of quantum meruit that the county court erred when it granted directed verdict in favor of Karedia.[11]

**Unjust Enrichment**

A party may recover under the cause of action of unjust enrichment when a person "has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros.*, 832 S.W.2d at 41; *see Galliford*, 254 S.W.3d at 460 (explaining that "[u]njust enrichment is an independent cause of action" (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998))). In this case, even if we assume that Kam preserved his

---

[11] To the extent that Kam argues that Hardt was acting as the agent for Karedia, Kam did not present any evidence during trial of a principal-agent relationship between Karedia and Hardt with respect to Kam's contract with Hardt. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) ("Texas law does not presume agency, and the party who alleges it has the burden of proving it."); *Harding Co. v. Sendero Res., Inc.*, 365 S.W.3d 732, 742 (Tex. App.—Texarkana 2012, pet. denied) (noting that "essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent" (quoting *Townsend v. University Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied))).

argument for appellate review that "[t]his is a case of unjust enrichment,"[12] Kam's express contract with Hardt forecloses this claim for the same reason that he does not have a quantum meruit claim. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000) (explaining that unjust enrichment claims are based on quasi-contract and that there is no recovery under a quasi-contract theory "when a valid, express contract covers the subject matter of the parties' dispute"); *Freeman v. Harleton Oil & Gas, Inc*., 528 S.W.3d 708, 740 (Tex. App.—Texarkana 2017, pet. denied) (discussing unjust enrichment theory of recovery, which is "predicated on the absence of an express contract controlling the circumstances"); *Zapata Corp. v. Zapata Gulf Marine Corp*., 986 S.W.2d 785, 788 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("When, as here, there is no express contract controlling the circumstances, a party may seek to recover under unjust enrichment.").

Further, we observe that Kam did not present any evidence that Karedia obtained a benefit from Kam "by fraud, duress, or the taking of an undue advantage." *See Heldenfels Bros.*, 832 S.W.2d at 41; *see also Johnson v. Maund Auto. Grp*., No. 03-03-00730-CV, 2004 Tex. App. LEXIS 7167, at *10–11 (Tex. App.—Austin Aug. 12, 2004, pet. denied) (mem. op.) (discussing elements of unjust enrichment and concluding that Johnson had not identified actionable conduct by Maund that would support "taking of 'unfair advantage'"); *Villarreal v. Grant Geophysical, Inc*., 136 S.W.3d 265, 270 (Tex. App.—San Antonio, 2004, pet. denied) (discussing "taking of an undue advantage" and explaining that unjust enrichment is not proper

[12] Kam raised "unjust enrichment" for the first time in his "Request for Rehearing" to the county court following the directed verdict, and his argument appears to have been directed to a quantum meruit claim. *See Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (concluding that "language used in the pleading indicates [subcontractor]'s claim against [owner] is a quantum meruit claim founded on unjust enrichment, rather than an independent cause of action for unjust enrichment").

remedy "because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant" (quoting *Heldenfels Bros.*, 832 S.W.2d at 42)). The undisputed evidence was that both Karedia and Kam were harmed when Hardt disappeared without completing the project or paying Kam.[13] Thus, Kam's argument concerning unjust enrichment does not support his position that the trial court erred by granting directed verdict in favor of Karedia.

## Conclusion

For these reasons, we overrule Kam's issues and affirm the county court's judgment.

---

[13] For example, when Karedia sent Kam an email in November 2014 asking for help, there was no evidence that Karedia was aware that Hardt had not paid Kam for the drawings that he had provided eight months earlier. Kam provided the drawings to Hardt in May 2014, and he testified as follows as to the assistance that he provided to Karedia in November:

> So on May 29th, we produced the drawings. And then from June 27th to July 3rd, 2014, Tony sent us some shop drawings. And shop drawings are drawings that fabricate or produces based on the structural drawings. And then the fabricator drawings will be used to actually go into the shop to make the elements for the building. So we did initial review for the shop drawings at Tony's request in late June to early July. And then we heard nothing on the building.

> And then in November 19th, 2014, Mr. Karedia e-mailed me and had some more shop drawing information which included some of the stuff that Tony had sent earlier but also included more information. So it was a complete set of shop drawings in November 19, 2014. And Mr. Karedia's instructions to us, Tom, can you help—Hi, Tom. Can you please check attached file and give advice. Thanks for your help, Bud. And he leaves a phone number. So we checked those shop drawings at the request of Mr. Karedia and returned those to him so he could have his material fabricated for his building.

11

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana
  Dissenting Opinion by Justice Triana

Affirmed on Motion for Rehearing

Filed:   December 13, 2019