

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00391-CV
_____

WILLIAM SCISCOE and DENISE SCISCOE,
ERIC DOW and ANGELA DOW,
ROBERT DRAPER and MICHELLE DRAPER,
JOHN HARRIS and KIMBERLY HARRIS,
CHARLES PEGG and GERALDINE PEGG,
CODY PETREE,
ALICE RANDALL,
JOHNNY REAMES and JEANETTE REAMES,
MARGARET WAGNER and JANE WAGNER,
TIM ZIMMERMAN and TRACY ZIMMERMAN,
AND TOWN OF DISH, APPELLANTS

V.

ENBRIDGE GATHERING (NORTH TEXAS), L.P.,
ATMOS ENERGY CORPORATION,
ENGERGY TRANSFER FUEL, L.P.,
ENTERPRISE TEXAS PIPELINE, L.L.C.
AND TEXAS MIDSTREAM GAS SERVICES, L.L.C., APPELLEES

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-254364-11; Honorable R.H. Wallace, Jr., Presiding

June 1, 2015

# MEMORANDUM OPINION

## Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This is an appeal from an order granting summary judgment. At issue is the interplay between the right of individual property owners to seek redress for the diminution in value of their properties caused by light, noise, and airborne chemical particulates originating from the operation of adjacent regulated energy production facilities and the right of the government to regulate emissions from those facilities. Appellants, eighteen homeowners[1] and the Town of DISH,[2] filed three separate lawsuits,[3] in three different courts, against six energy production companies (five of whom are Appellees),[4] alleging that noise, light, odors, and chemical particulates emanating from Appellees' facilities,[5] which were independently owned and operated by

---

[1] The eighteen homeowners are: William Sciscoe, Denise Sciscoe, Eric Dow, Angela Dow, Robert Draper, Michelle Draper, John Harris, Kimberly Harris, Charles Pegg, Geraldine Pegg, Cody Petree, Alice Randall, Johnny Reams, Jeanette Reams, Margaret Wagner, Jane Wagner, Tim Zimmerman, and Tracy Zimmerman.

[2] DISH was formerly known as Town of Clark. In 2005, pursuant to an agreement with DISH Network, the town changed its name to "DISH" as part of a commercial agreement whereby DISH Network agreed to provide complimentary satellite television services to its residents in exchange for an agreement to change the town name. *See* U.S. Dep't of Interior Detail Report for DISH, available at: http://geonames.usgs.gov/pls/gnispublic/f?p=gnispq:3:3757982691432507::NO::P3_FID:1926816.

[3] On February 28, 2011, three separate lawsuits were filed in Denton County, Texas. DISH filed one lawsuit (362nd District Court), sixteen homeowners filed another (211th District Court), and two homeowners filed a third (431st District Court).

[4] Five of the six energy companies are Appellees herein: Atmos Energy Corporation, Enbridge Gathering (North Texas) L.P., Energy Transfer Fuel, L.P., Enterprise Texas Pipeline, L.L.C., and Texas Midstream Gas Services. A sixth energy company defendant, Crosstex North Texas Gathering, L.P., was nonsuited prior to judgment.

[5] In 2005, Energy Transfer Fuel, L.P. constructed the Ponder Compressor Station which was sold to Atmos Energy a year later. In 2006, Enbridge Gathering (North Texas) L.P. built the East Justin Compressor Station. In 2007, Crosstex North Texas Gathering, L.P., built the Justin Compressor Station. Also in 2007, Energy Transfer built the Hog Branch Compressor Station and operated a dehydrator. A second dehydrator was built in 2009. In 2008, Texas Midstream Gas Services, L.L.C. built the Ponder Compressor Station, and in 2009, Enterprise Texas Pipeline, L.L.C. constructed the Northlake Metering Station adjacent to the Justin Compressor Station to meter gas entering the compressor station. It also has a mechanism for releasing gas into the air.

Appellees, caused a nuisance and constituted a trespass, thereby entitling them to recover monetary damages. Pursuant to a motion for change of venue, the three lawsuits were transferred to Tarrant County. Before trial, the three lawsuits were consolidated into one lawsuit in the 96th District Court bearing cause number 96-254364-11.

By its claim, Appellant, DISH, sought recovery of damages occasioned by the erosion of its tax base due to declining property values, together with recovery of "costs associated with [Appellees'] activity," "damages" of $1,000 per day for trespass, and exemplary damages pursuant to Chapter 41 of the Texas Civil Practices and Remedies Code. The remaining Appellants sought recovery of damages for (1) the loss of market value of their properties, (2) annoyance and discomfort, (3) injury to personal property, (4) mental anguish, and (5) exemplary damages. None of Appellants sought injunctive relief.

After answering the allegations against them, each Appellee separately moved for summary judgment. Four of the five Appellees, Enbridge Gathering, Atmos Energy, Energy Transfer Fuel, and Texas Midstream, filed traditional motions for summary judgment raising five grounds to defeat Appellants' claims. By their respective motions, it was asserted that Appellants' claims against them are barred because (1) the migration of odors and chemical particulates onto Appellants' properties cannot constitute a trespass as a matter of law, (2) the claims are pre-empted by Federal and State Clear Air Acts, (3) the claims are barred by the political question doctrine, (4) Appellees' activities cannot constitute a nuisance or trespass, as a matter of law, because their emissions fall within regulatory limits, and (5) Appellees' claims predate

3

their lawsuit by more than two years and are, therefore, barred by limitations. Appellee, Enterprise Texas Pipeline, filed a hybrid motion for summary judgment under both traditional and no-evidence standards. As grounds for its traditional motion, Enterprise asserts Appellants' claims fail because (1) the claims are pre-empted by Federal and State Clean Air Acts, (2) it is in compliance with all applicable standards, statutes, and regulations, (3) its station does not emit pollutants, noise, odor, or light that would constitute an unreasonable or substantial interference with Appellants' rights, and (4) DISH does not have the requisite statutory authority to file this lawsuit. By its no-evidence motion, Enterprise generally asserts there is no evidence to support all the elements of Appellants' nuisance and trespass claims. Specifically, Enterprise contends Appellants have failed to provide any evidence that its metering station has emitted any harmful substances, noises, odors, or light that would constitute a nuisance or trespass. Enterprise further contends Appellants have no evidence to establish that their damages, if any, were caused by any condition created by Enterprise's operations. Finally, Enterprise maintains that DISH did not have the authority to sue for damages or to abate an alleged nuisance occurring outside its extraterritorial jurisdiction. Without specifying the basis of its decision, the trial court granted Appellees' summary judgment motions and this appeal followed.[6]

---

[6] The trial court entered an order in favor of Enbridge on June 5, 2013, in favor of Atmos on August 2, 2013, and in favor of Energy Transfer, Enterprise, and Texas Midstream on September 13, 2013. After entering these separate orders as to each motion for summary judgment, the trial court entered an *Order Granting Final Judgment.* After that judgment was entered, the case was appealed to the Second Court of Appeals and later transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). In disposing of this case, we are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. TEX. R. APP. P. 41.3.

4

SUMMARY OF ISSUES PRESENTED

By six issues, Appellants contend the trial court erred in granting summary judgment by holding their claims were (1) pre-empted by Federal and State Clean Air Acts, (2) barred by the political question doctrine, (3) not actionable as a matter of law, (4) protected by conduct within regulatory guidelines, and (5) barred by limitations.  In addition, DISH contends (6) the trial court erred in holding that it does not have the constitutional or statutory authority to prosecute its claim.

By what it designates as "cross-issues," Enterprise also contends: (1) the trial court correctly granted summary judgment in favor of Enterprise because Appellants failed to direct the trial court to any evidence supporting the challenged elements of their cause of action and (2) Appellants waived their appeal as to Enterprise by failing to raise a general "Malooly" issue,[7] thereby requiring this Court to affirm the trial court's judgment on the legal theory of unassigned error.

Keeping in mind that this appeal involves multiple claims, by nineteen plaintiffs, against five defendants, raising numerous defenses—in an effort to avoid becoming bogged-down in the myriad of arguments presented—we will address the common defensive claims of Appellees collectively—addressing first the question of whether, as a matter of law, the migration of odors and microscopic chemical particulates cannot constitute a trespass.  Next, because the arguments overlap, we will analyze together the defensive theories of pre-emption, the political question doctrine, and conduct within

_____

[7] *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

5

regulatory guidelines, before moving on to the defensive theory of limitations. We will then address Enterprise's traditional summary judgment issues not previously addressed before moving on to its no-evidence allegations. Finally, we will address Enterprise's "Cross-Issues."

SUMMARY OF RULING

To the extent that Appellants seek recovery of (1) monetary damages for prospective injuries, or (2) mental anguish (including "annoyance and discomfort"), or they seek (3) to abate an ongoing nuisance, or (4) to assess $1,000 "per day for trespass," we affirm the trial court's order granting summary judgment. In all other respects, we reverse the trial court's order granting summary judgment and remand this case to the trial court for further proceedings.

BACKGROUND FACTS

Appellants are homeowners in DISH, a residential community in Denton County, Texas. In 2004, Appellees began obtaining permits for the construction and operation of natural gas pipeline compressor stations near the outskirts of DISH. From 2005 through the summer of 2009, Appellees constructed and operated separate natural gas compressor stations and a metering station. For purposes of simplicity, the parties have referred to the compressor stations and the metering station collectively as the Ponder Compressor Station. The stations comprising the Ponder Compression Station are located immediately adjacent to one another and the overall facility is located approximately one-quarter to one-half of a mile from Appellants' properties.

6

The Ponder Compression Station began operating in February 2005 with a single compressor station owned and operated by Enbridge. The number of compressor engines used by Enbridge has changed over time, from a peak of three engines in 2006, to one in January of 2011. The amount of natural gas processed at that station peaked in August 2009 and has declined since that date. Enbridge transferred its ownership interest to Atmos in 2006. Energy Transfer began the construction of its facility in 2006. Construction was completed and Energy Transfer commenced its operations in August of 2007. Appellants allege Energy Transfer added a second dehydrator to its facility in the summer of 2009. Texas Midstream began construction of its facility in early 2008, and it became operational in May of 2008. According to its summary judgment evidence, Texas Midstream has not made any "substantial" alterations or modifications to its facility. Enterprise contends its operations are different from that of the other Appellees because it does not operate a compressor station. Instead, Enterprise operates a metering facility "near, but not at, the 'Ponder Compressor Station.'" According to its summary judgment evidence, the metering station went into operation in June of 2009. Enterprise further contends that its operations are functionally distinguishable from the other Appellees because its facility does not include condensate tanks, the operation of diesel engines, or the regular operation of tractor-trailer rigs or large trucks. Additionally, Enterprise contends that its facility does not vent natural gas into the atmosphere.

As early as 2005, out of concern for their own safety, some residents began reporting to the operators that excessive noise and offensive odors were emanating from the area. At that time, they were assured the smell was merely an odorant and no

7

harmful gases or pollutants were being emitted. In 2007, the mayor of DISH, Calvin Tillman, complained several times to Atmos, in writing, concerning the noise and noxious fumes which he claimed were diminishing the quality of life for the residents of DISH and interfering with the use and enjoyment of their properties.

In March 2008, some Appellants contacted the Texas Commission on Environmental Quality (TCEQ) with complaints concerning the operation of the Ponder Compression Station, claiming those activities caused nausea and headaches. TCEQ sent field investigators to meet with the complaining parties; however, a nuisance odor could not be confirmed. The complainants were provided with charts and odor logs to track their complaints. On February 23, 2009, the result of TCEQ's investigation was delivered to Appellant, William Sciscoe, as a commissioner for DISH. Appellants then engaged Wolf Eagle Environmental, an environmental sampling and testing firm, to conduct an independent investigation of their complaints. In September 2009, Appellants were made privy to the report issued by Wolf Eagle. That report revealed detection of the presence of benzene, xylene, ethyl benzene, toluene, and other "deleterious" substances. Each Appellant provided competent summary judgment evidence that the Wolf Eagle report was the first time they learned of the true nature of the emissions from the Ponder Compression Station and it was not until then that they believed the facility constituted a nuisance or the emissions resulted in a trespass.

The complaints continued and in March 2010, TCEQ installed and began operating AutoGC Monitors to record hourly air samples of regulated volatile organic compounds (VOCs) including benzene, xylene, ethyl benzene, and toluene. The monitor was physically situated between the Ponder Compression Station and

Appellants' residences. TCEQ also conducted tests around the compressor stations and found that pollutants "were either not detected or were detected below levels of short-term health and/or welfare concern." Dozens of further tests yielded the same results, i.e., "[e]xposure to levels of VOCs measured in this sample would not be expected to cause short-term adverse health effects, adverse vegetative effects, or odors."

The Texas Department of State Health Services also performed medical tests on twenty-eight DISH residents for exposure to chemical levels based on the Ponder Compressor Station natural gas operations. Likewise, tap water samples were tested. The results showed that exposure to VOCs were similar to that of the general population of the United States and that the exposure was no higher than that of the general population. The results also showed that residents who tested with higher levels of benzene (a substance contained in cigarette smoke) were smokers.

On January 27, 2011, TCEQ notified Enbridge that "[n]o violations were documented during the investigation." Ultimately, TCEQ determined that operations at the Ponder Compressor Station were within the State limits for emissions.

On February 28, 2011, Appellants filed their lawsuits[8] against Appellees in Denton County, alleging nuisance and trespass. By their pleadings, Appellants alleged that noise and emissions from Appellees' natural gas operations constituted a public and private nuisance. They also asserted a trespass claim based on the migration of

---

[8] William and Denise Sciscoe filed one suit. A second suit was brought by Eric and Angela Dow, Robert and Michelle Draper, John and Kimberly Harris, Charles and Geraldine Pegg, Cody Petree, Alice Randall, Johnny and Jeanette Reams, Margaret and Jane Wagner, and Tim and Tracy Zimmerman. The third suit was filed by DISH.

chemical particulates in the air above DISH and the private properties of Appellants. Appellants only sought recovery of compensation for past injuries, primarily the diminution in the value of their properties.[9]  They did not claim any pecuniary relief for personal injuries or medical expenses, nor did they seek any injunctive relief.  After a high level of media coverage concerning the allegations, the trial court granted a change of venue and the three cases were moved from Denton County to Tarrant County.

STANDARDS OF REVIEW

TRADITIONAL MOTION FOR SUMMARY JUDGMENT

We review the granting of a motion for summary judgment *de novo.  Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).  Furthermore, "[i]n reviewing a summary judgment, we consider all grounds presented to the trial court and preserved on appeal in the interest of judicial economy."  *Diversicare Gen. Partner*, *Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005).  That said, issues not expressly presented to the trial court by written motion, answer, or other response are not considered on appeal as grounds for reversal.  TEX. R. CIV. P. 166a(c).  When, as here, the trial court does not specify the grounds for its ruling, a summary judgment will be affirmed if any of the grounds presented to the trial court are meritorious.  *Merriman v. XTO Energy*, *Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

---

[9] DISH sought recovery of lost tax revenues based on a diminution of property values.

The party moving for a traditional summary judgment bears the burden of proving its entitlement thereto as a matter of law. *Roskey v. Texas Health Facilities Com.*, 639 S.W.2d 302, 303 (Tex. 1982). Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. *Diversicare Gen. Partner*, *Inc.*, 185 S.W.3d at 846. In conducting our review, we are required to review the summary judgment record in the light most favorable to the non-movant, indulging every reasonable inference in favor of the non-movant, and resolving all doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)).

NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict, and we apply the same legal sufficiency standard we would apply in reviewing a directed verdict. *See King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). In a no-evidence summary judgment motion, the movant contends there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). The motion must state the elements as to which there is no evidence. TEX. R. CIV. P. 166a(i). Once the motion is filed, the burden shifts to the non-movant to present evidence raising an issue of material fact as to the challenged elements of its cause of action or defense. *See Mack Trucks*, *Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the non-movant produces more than a scintilla of probative evidence raising a genuine issue of material fact on the challenged elements,

11

the trial court must deny the motion. *See Hamilton*, 249 S.W.3d at 426. *See also* TEX. R. CIV. P. 166a(c), (i). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See City of Keller*, 168 S.W.3d at 827; *Merrell Dow Pharmaceuticals v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied,* 523 U.S. 1119, 118 S. Ct. 1799, 140 L. Ed. 2d 939 (1998). A non-moving party is not required to marshal its entire proof, as its response need only raise a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i), Notes and Comments (1997); *Hamilton*, 249 S.W.3d at 426.

We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See City of Keller,* 168 S.W.3d at 827. A no-evidence challenge will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch*, 118 S.W.3d at 751.

CAUSES OF ACTION BEING ASSERTED

TRESPASS

Generally speaking, the elements of a cause of action for trespass to real property are: (1) the claimant has a lawful right to possess the property, (2) the defendant physically enters the property, (3) the entry was intentional and voluntary, and (4) the defendant's trespass causes an injury to the claimant's right of possession. *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied);

*Baker v. Energy Transfer Co.*, No. 10-09-00214-CV, 2011 Tex. App. LEXIS 8304, at *21-22, (Tex. App.—Waco 2011, pet. denied) (mem. op.). "To constitute a trespass there must be some physical entry upon the land by some 'thing.'" *R.R. Comm'n of Texas v. Manziel,* 361 S.W.2d 560, 567 (Tex. 1962) (quoting *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 416 (Tex. 1961). The "entry upon another's land need not be in person, but may be made by causing or permitting a thing to cross the boundary of the premises." *Gregg* 344 S.W.2d at 416 (quoting *Glade v. Dietert*, 295 S.W.2d 642, 645 (Tex. 1956)); *Villarreal v. Grant Geophysical, Inc.,* 136 S.W.3d 265, 268 (Tex. App.—San Antonio 2004, pet. denied) (citing *Gregg,* 344 S.W.2d at 416).

While some Texas courts have described "[t]he gist of an action for trespass to realty [to be] the injury to the right of possession," the Supreme Court has indicated that the focus should be on the injury caused rather than the nature of the interference. *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9 (Tex. 2008) (holding that a plaintiff could recover actual damages to his non-possessory reversion interest in the subsurface minerals if he could establish actual damages). The court indicated that it believes that there should be something more than the naked crossing of property lines by someone or something—"namely, actual permanent harm to the property of such sort as to affect the value of [the property owner's] interest." *Id.* at 10 (quoting W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, Prosser and Keeton on the Law of Torts § 13, at 78 (5th ed. 1984) (footnotes omitted)).

13

The term "nuisance" has haphazardly been used by courts and legal commentators because through a "series of historical accidents . . . nuisance [has come] to cover the invasion of different, and unrelated, kinds of interests and to refer to various kinds of conduct on the part of the defendant." Prosser, *Nuisance Without Fault,* 20 Tex. L. Rev. 399, 411 (1942). Generally speaking, a nuisance is a regularly recurring condition that "substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to a person of ordinary sensibilities." *Natural Gas Pipeline Co. of Am. v. Justiss,* 397 S.W.3d 150, 153 (Tex. 2012) (quoting *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264 (Tex. 2004)); *City of Abilene v. Downs,* 367 S.W.2d 153, 159-60 (Tex. 1963). If foul odors, dust, noise, and bright lights are sufficiently extreme, they may constitute a nuisance. *Schneider Nat'l Carriers, Inc.,* 147 S.W.3d at 269.

Courts have generally divided actionable nuisances into three classifications: (1) negligent invasion of another's interests, (2) intentional invasion of another's interests, or (3) other inappropriate conduct that invades another's interest (e.g., the illegal sale of controlled substances or the operation of a gambling or prostitution establishment; *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 125.0015, 125.062, 125.063); *City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1996). Because Appellants' claims fall within either the first or second category, we will limit our discussion to those categories.

In the context of this case, the elements of a common law nuisance are (1) the plaintiffs have an interest in their own property, (2) the defendants interfered with that interest by conduct that was either (a) intentional and unreasonable or (b) negligent, (3)

14

the defendants' conduct resulted in a condition that substantially interfered with the plaintiffs' private use and enjoyment of their properties, and (4) the defendants' interference caused injury to the plaintiffs. *See City of Tyler,* 962 S.W.2d at 503-04. *See also* RESTATEMENT (2d) OF TORTS § 822 (1979).[10]

ANALYSIS OF ISSUES PRESENTED

ISSUE THREE—HAVE APPELLANTS FAILED TO PLEAD A TRESPASS CAUSE OF ACTION AS A MATTER OF LAW?

Here, Appellants contend (1) they have a lawful right to the exclusive possession of their respective properties, (2) Appellees have violated that right by intentionally and voluntarily causing the regular and continuing physical crossing of their respective property lines by odors and other microscopic chemical particulates emanating from Appellees' operations, and (3) Appellants' property values have been diminished by that trespass. The gist of Appellees' argument is that the migration of airborne particulates originating from their facilities and crossing over and onto Appellants' properties could never constitute a trespass, as a matter of law. They argue that the cause of action for trespass by airborne particulates requires both a physical entry and a significant deposit of particulate materials on the properties. We disagree.

The Texas Supreme Court has recognized that a trespass cause of action can exist as the result of "invasions of the airspace, close to the ground, that [interfere] with

---

[10] § 822 GENERAL RULE

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a)     Intentional and unreasonable, or

(b)     Unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

15

actual or potential use and occupation" of the property. *Coastal Oil & Gas Corp.*, 268 S.W.3d at 11 n.31. Although that court has adopted the position that the legal maxim "*cujus est solum, ejus est usque ad coleum ed an infernos*" (whoever owns the soil owns everything up to the sky and down to the depths) is out of place in the modern world of air travel and deep drilling, no one questions the fact that Appellants are not arguing about some abstract interference with the peripheral limits of their property interests. Appellants are complaining about the actual physical trespass of the surface of their properties and the habitable atmosphere immediately adjacent thereto.

A trespass does not have to be committed in person but may be caused by allowing or causing something to cross the boundary of the property in question. *Villarreal*, 136 S.W.3d at 268 (citing *Gregg*, 344 S.W.2d at 416). A property owner's right to pursue an action for trespass occurs when there has been a physical unauthorized entry upon either the surface of his property of the airspace immediately adjacent thereto. *See Villarreal*, 136 S.W.3d at 269 (holding that a trespass of aerial space above the complainant's property may be committed by causing something to physically enter or crossover the land, such as the discharge of pollutants, soot, or carbon).

In reaching our conclusion that the activities of Appellees *could* constitute a trespass, not only have Appellees failed to cite us to a single Texas case that definitively makes the far-reaching statement of law they contend to be established "as a matter of law," but we have found a body of law supporting Appellants' contention that airborne particulates can constitute a trespass. Given the factual and procedural posture of this case, Appellees have failed to establish that the migration of odors and

16

chemical particulates onto Appellants' properties cannot constitute a trespass, as a matter of law.

In making the assertion that the mere airborne migration of particulates across Appellants' properties does not constitute a trespass as a matter of law, Appellees rely heavily on *Coastal Oil & Gas Corp.*, 268 S.W.3d at 11-12. As we explained above, Appellees misconstrue the holding in this case by reading it too broadly. The issue in *Coastal Oil & Gas Corp.* was whether subsurface migration of hydraulic fluids constituted a trespass where the fracturing of a natural gas reservoir extended across property lines. In its opinion the Supreme Court specifically noted that it was not bound by any prior ruling concerning whether such activity would give rise to a cause of action sounding in trespass—and it was not going to decide that broader issue at that time either. *Id.* at 11-12. In explaining its decision to not rule on the issue, the court cited its 1992 *per curiam* decision in *Geo Viking, Inc. v. Tex-Lee Operating Company,* No. D-1678, 1992 Tex. LEXIS 40 (Tex. 1992) (a decision holding that the subsurface migration of hydraulics did constitute a subsurface trespass),[11] by specifically noting that opinion had been withdrawn on rehearing and the court had expressly stated that it was not deciding the issue of trespass as it pertained to the subsurface migration of hydraulic fluids across property boundary lines. *See Geo Viking, Inc. v. Tex-Lee Operating Company,* 839 S.W.2d 797, 798 (Tex. 1992) (on reh'g) (stating that its decision "should not be understood as approving or disapproving the opinions of the court of appeals analyzing the rule of capture or trespass as they apply to hydraulic fracturing"). As

---

[11] *Geo Viking* relied upon *Gregg,* 344 S.W.2d at 416 and *Amarillo Oil v. Energy-Agri Products,* 794 S.W.2d 20, 27 (Tex. 1990), to reach the conclusion that the subsurface trans-boundary migration of materials did constitute a trespass.

17

such, a reading of *Coastal Oil & Gas Corp.* does not logically lead to the conclusion Appellees proffer.

In *Coastal Oil & Gas Corp.*, the court even went on to say that "[h]ad [the defendant] caused something like proppants to be deposited on the surface . . . it would be liable for trespass."[12] *Id.* at 21-22. It should be noted that in making this statement the court did not say that there needed to be deposits on the surface in order for there to be a trespass. Rather, in the context of discussing the necessity of proving actual damages, the court merely offered that scenario as an example of conduct that would constitute an actionable trespass. The court still recognized that an invisible trespass (in that case the subsurface migration of hydraulic fluids used in the fracturing of a natural gas well that extended into another's property) could constitute an actionable trespass if it caused actual injury.

Appellees also heavily rely on *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264 (Tex. 2004), a multi-party suit brought by residents living near the Houston ship channel complaining of conditions created by nearby industrial plants. Similar to the allegations in this case, the plaintiffs alleged air contaminants, odors, lights, and noise from the plants interfered with the use and enjoyment of their properties. The court did not address the issue of whether air contaminants, odors, light, and noise could constitute a trespass but, instead, side-stepped that issue by procedurally disposing of the claim while "[a]ssuming that entry of photons, particles, or sound waves can

---

[12] A "proppant" is defined as "[s]ized particles mixed with fracturing fluid to hold fractures open after a hydraulic fracturing treatment. In addition to naturally occurring sand grains, man-made or specially engineered proppants, such as resin-coated sand of high-strength ceramic materials . . . may also be used." Schlumberger, *Oilfield Glossary, see: http://www.glossary.oilfield.slb.com/en/Terms.aspx?LookIn=term%20name&filter=proppant* (last visited: May 26, 2015).

constitute a trespass." *Id.* at 292. Accordingly, neither *Coastal Oil & Gas Corp.* nor *Schneider Nat'l Carriers, Inc.* supports Appellees' position.

In *Baker v. Energy Transfer Co.*, No. 10-09-00214-CV, 2011 Tex. App. LEXIS 8304, at * 23 (Tex. App.—Waco 2011, pet. denied) (mem. op.), the Waco Court of Appeals affirmed the trial court's granting of summary judgment as to the plaintiff's trespass cause of action grounded on the encroachment of hydrogen sulfide from the defendant's natural gas treating plant, not based on the absence of a cause of action, but instead based on the plaintiff's failure to offer sufficient summary judgment evidence in the form of expert testimony that the alleged chemical particulates actually entered onto the plaintiff's property. Here, Appellants are not burdened by that problem because they did provide summary judgment evidence in the form of the expert report from Wolf Eagle Environmental.

Contrary to the position being advocated by Appellees, the present Texas jurisprudence and the "modern" trend among other states is that, depending on the facts of a given case, the migration of airborne particulates can constitute an actionable trespass. *See Stevenson v. E.I. DuPont de Nemours & Co.,* 327 F.3d 400, 405-06 (5th Cir. 2003) (finding no Texas case requires the deposit of particulate in order to establish a trespass and further holding that "Texas law would permit recovery for [the trespass] of airborne particulates"); *In re TVA Ash Spill Litig.*, 805 F. Supp. 2d 468, 483-84 (E.D. Tenn. 2011) (holding that a trespass claim under Tennessee law, applying the "modern" trend of trespass law, may be premised upon the entry of intangible particles such as dust, gas, or odors onto the real property of another). *See Borland v. Sanders Lead Co., Inc.*, 369 So.2d 523, 529-30 (Ala. 1979) (recognizing that invasion of airborne

particulates [in this case pollution from the defendant's smoke stack] could constitute a trespass under Alabama law provided the invasion causes "substantial damages" to the property); *Williams v. Oeder*, 659 N.E.2d 379, 382 (Ohio App. 1995) (approving the trial court's finding that under Ohio law a trespass claim may be maintained for entry onto property by airborne pollutants [here dust, noise, and odors], also applying the "substantial damages" rule); *Ream v. Keen,* 828 P.2d 1038, 1040 (Ore. 1992) (drift of smoke and soot held to constitute a trespass under Oregon law where the court found that the intrusion was not "so minimal that, as a matter of law, no legal consequences can attach" to the intrusion); *Martin v. Reynolds Metals Co.*, 342 P.2d 790, 794 (Ore. 1959) (stating that a trespass can be defined as "any intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist . . . .").

Given the legal principles set forth above, we agree with Appellants that a trespass claim under Texas law may be premised upon the entry onto property of airborne particulates. While we expressly do not hold that the activity in this case constitutes an actionable trespass, the trial court erred in saying that, as a matter of law, it did not. To establish an actionable trespass, Appellants must prove the remaining elements of their trespass cause of action. In particular, they must establish causation, i.e., that the particulates emanated from the activities of Appellees and that Appellants sustained some compensable injury as a result thereof. Because intentionally and voluntarily allowing chemical compounds to physically enter the airspace of another's property can cause injury and, therefore, constitute a trespass, we find Appellees are

incorrect in their proposition of law that the migration of airborne particulates originating from their facilities and crossing onto Appellants' properties could never constitute a trespass, as a matter of law. To the extent the trial court may have based its ruling on this premise, the trial court erred and Appellants' third issue is sustained.

ISSUES ONE, TWO, AND FOUR—ARE APPELLANTS' CLAIMS BARRED BY ALLEGATIONS OF CONDUCT WITHIN GOVERNMENTAL REGULATIONS, PRE-EMPTION, OR THE POLITICAL QUESTION DOCTRINE?

Appellees contend that, even if Appellants can maintain a cause of action for either trespass or nuisance, those claims are nevertheless barred because Appellants' conduct was done within governmental regulations, is subject to pre-emption, and is non-justiciable under the political question doctrine. Specifically, Appellees contend Appellants' trespass and nuisance claims would interfere with the ability of Federal and State authorities to regulate airborne emissions. This argument fails because Appellants simply do not seek to alter or change the emission standards under which Appellees operate. Instead, Appellants seek to compel Appellees to compensate them for actual damages they have sustained as a result of the lawful operations of Appellees. Just because Appellees are operating their natural gas compression facilities within the applicable regulatory guidelines does not mean that Appellants have not suffered compensable injuries as a result of those operations. Nor does it mean that Appellees are somehow immune from liability for damages they may have caused just because they have a regulatory permit. Stated another way, just because you are allowed by law to do something, does not mean that you are free from the consequences of your action. While the appropriateness of Appellees' conduct according to applicable regulations may affect by the nature and extent of Appellants'

compensation (e.g., the inability to recover exemplary damages), regulation is not a substitute for prudent operation. Regulatory compliance or licensure is not a license to damage the property interests of others.

Appellees have also argued Appellants' claims for common law nuisance and trespass undermine governmental regulatory structures. But, the cases cited by Appellees are inapposite. For instance, Appellees rely heavily on the case of *North Carolina, ex rel. Cooper v. Tennessee Valley Authority,* 615 F.3d 291, 302-05 (4th Cir. 2010), for the proposition that claims that seek to impose standards different from or in conflict with the regulatory standards are pre-empted by Federal and State law. That case, however, differs greatly from the case at hand because it dealt with a request for an affirmative injunction requiring immediate installation of emissions controls at four TVA electricity generating plants in Alabama and Tennessee. No such injunctive relief has been requested in this case. Appellants' claims are simply claims for monetary compensation limited to the past diminution in the value of their properties.

To the extent that Appellants seek to recover damages for any future diminution in the value of their properties or "damages" of $1,000 per day for trespass, this claim looks more like a penalty than a claim for recovery of existing actual damages. Accordingly, we agree with Appellees that this could be seen as an attempt to regulate or control their future activities. Because such a claim could be construed as seeking to impose a standard different from or perhaps in conflict with the regulatory standards already in place, those claim are pre-empted by Federal and State law.

Therefore, as to the question of whether Appellants' claims are barred by allegations of conduct within governmental regulations, pre-emption, or the political

22

question doctrine, Appellants' issues one, two and four are sustained in part and overruled in part.

ISSUE FIVE—ARE APPELLANTS' CLAIMS BARRED BY LIMITATIONS?

The applicable statute of limitation as to either a nuisance[13] or trespass[14] claim is two years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Schneider Nat'l Carriers,*

---

[13] Nuisance—In order to establish a limitations defense as to a claim of nuisance, the defendant must prove that a permanent nuisance occurred, if at all, more than two years before the landowner's lawsuit. *Justiss,* 397 S.W.3d at 153; *City of Abilene v. Downs,* 367 S.W.2d 153, 159-60 (Tex. 1963). "A permanent nuisance claim accrues when the condition first 'substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities.'" *Justiss,* 397 S.W.3d at 153 (quoting *Schneider Nat'l Carriers, Inc.,* 147 S.W.3d at 269-70). As such, a permanent nuisance cause of action accrues when an injury first occurs or is discovered; whereas, a temporary nuisance cause of action accrues anew upon each injury. *Id.* If the nuisance alleged is temporary, injuries that occurred within two years of suit are timely regardless of when they began; whereas, if they are permanent, all of the claims that began more than two years prior to suit would be barred. *Id.*

Due to the very nature of a nuisance, an accrual date is not something that is defined by statute or even a single event but is rather a legal question for the courts to determine based upon the facts and circumstances of a given case. Because a nuisance claim accrues only when a condition exists that *substantially* interferes with the use and enjoyment of the affected property by causing *unreasonable* discomfort or annoyance to persons of *ordinary* sensibilities, the determination of the accrual of a nuisance cause of action is a decision burdened with fact issues.

Furthermore, reviewing the record in this case, we note Appellees failed to address the synergistic effect their individual activities might have had on the overall condition being addressed by Appellants' claims. Because Appellants contend it is the combination of the activities of the individual Appellees that causes the overall condition to rise to the level of a nuisance, a nuisance cause of action would not have accrued until every Appellee commenced full operational status—an event alleged to not have occurred until August of 2009. Where, as here, Appellants contend the interference in question only became "substantial" when the conglomerate activities of Appellees combined to create a condition that caused unreasonable discomfort or annoyance, a finding of an accrual of their nuisance cause of action prior to February 28, 2009, as a matter of law, is not supported by the summary judgment evidence.

Furthermore, where, as here, the claimed nuisance involves largely subjective criteria such as obnoxious smells and odors or "excessive" light and sound, the analysis is necessarily fact dependent. *See City of Abilene,* 367 S.W.3d at 160. The point at which the condition in question moves from unpleasant to insufferable or from annoying to intolerable "might be difficult to ascertain, but the practical judgment of an intelligent jury [is] equal to the task." *Justiss*, 397 S.W.3d at 155 (quoting *Merrill v. Taylor*, 10 S.W. 532, 534 (Tex. 1888)).

[14] Trespass—In order to establish a limitations defense as to a claim of trespass, the defendant must prove that a permanent trespass occurred, if at all, more than two years before the landowner's lawsuit. *Krohn v. Marcus Cable Assoc. L.P.*, 201 S.W.3d 876, 879 (Tex. App.—Waco 2006, pet. denied). A cause of action for a permanent trespass accrues upon discovery of the first actionable injury. *Waddy v. City of Houston,* 824 S.W.2d 97, 102 (Tex. App.—Houston [14th Dist.] 1992, writ denied). If the

23

*Inc.,* 147 S.W.3d at 270 (nuisance); *Krohn v. Marcus Cable Assoc. L.P.*, 201 S.W.3d 876, 879 (Tex. App.—Waco 2006, pet. denied) (trespass). Suit was filed on February 28, 2011. Therefore, in order to prevail on their affirmative defense of limitations, Appellees were faced with the extremely difficult burden of establishing, as a matter of law, the accrual of Appellants' claims prior to February 28, 2009.

A defendant claiming the defense of limitations has the burden of establishing, as a matter of law, every element of that defense. TEX. R. CIV. P. 166a(b), (c). In that regard, as it pertains to the affirmative defense of limitations, Appellees are charged with the burden of establishing, as a matter of law, the accrual of Appellants' nuisance and trespass causes of action. In conducting our review, we are required to review the summary judgment record in the light most favorable to Appellants, indulging every reasonable inference in their favor, and resolving all doubts against Appellees. *Sudan*, 199 S.W.3d at 292. Reviewing the record in this case under that standard, we see multiple issues that would preclude the trial court from granting summary judgment on the basis of limitations, including, but not limited to: (1) whether this claim involved a temporary or permanent nuisance, (2) whether a condition existed that substantially interferes with the use and enjoyment of Appellants' properties, (3) whether the condition caused unreasonable discomfort or annoyance, (4) whether a person of ordinary sensibilities would have been affected by the condition, (5) whether chemical

_____

trespass consists of hazardous chemicals, the trespass begins when the landowner knows or should have known that the hazardous chemicals were there. *See Justiss,* 397 S.W.3d at 155 (citing *Tenn. Gas Transmission Co. v. Fromme,* 269 S.W.2d 336, 338 (1954).

Generally, a cause of action for a continuous trespass does not accrue for purposes of the commencement of limitations until the tortious conduct ceases because an ongoing trespass accrues anew with each successive trespass. *See Creswell Ranch & Cattle Co. v. Scoggins,* 39 S.W. 612, 614 (Tex. Civ. App.—Fort Worth 1897, no writ).

particulates crossed the boundary line of the Appellants' properties, (6) whether that trespass, if any, involved a permanent or ongoing trespass, (7) whether any chemical particulates were hazardous, (8) whether Appellants knew the chemical particulates were hazardous, and (9) if so, when did the they first become aware of that fact.

While we agree with Appellees that there is some competent summary judgment evidence that complaints were made more than two years prior to the commencement of this lawsuit, we are not convinced they have established the accrual of Appellants' causes of action, as a matter of law. Accordingly, Appellees have not established their entitlement to summary judgment on the basis of limitations. Because fact issues exist as to the accrual of causes of action for either nuisance or trespass, the trial court's summary judgment order cannot be sustained on the basis of Appellees' statute of limitations claims. Appellants' issue five is sustained.

ISSUE SIX—DID DISH HAVE AUTHORITY TO FILE THIS LAWSUIT?

By its sixth issue, DISH contends the trial court erred to the extent, if any, that it granted summary judgment based upon Enterprise's claim that it did not have the requisite statutory authority to assert the claims that it did. We agree.

In its traditional motion for summary judgment, Enterprise made two arguments concerning DISH's authority to prosecute this case. First, Enterprise argued that DISH lacked the authority to regulate a nuisance outside of its extraterritorial jurisdiction; and, second, Enterprise argued that as a Type C general-law municipality, DISH simply lacked the requisite statutory authority to prosecute a trespass action. For purposes of logical sequence, we will address these arguments in reverse order.

DISH'S AUTHORITY TO SUE

All municipalities are granted specific authority relating to lawsuits. *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 788 n.8 (Tex. App.—Texarkana 2004), *pet. denied*, 228 S.W.3d 648 (Tex. 2007), *abrogated on other grounds by Tooke v. City of Mexia*, 197 S.W. 3d 325, 338-42 n.60 (Tex. 2006). The Texas Local Government Code provides that a Type A municipality "may sue and be sued, implead and be impleaded, and answer and be answered in any matter in any court or other place." TEX. LOCAL GOV'T CODE ANN. § 51.013 (West 2008). A Type B municipality may "sue and be sued and may plead and be impleaded." *Id.* at § 51.033. Under section 51.051(b), certain Type C municipalities have the same authority as a Type B general law municipality unless there is a conflict with provisions of the Local Government Code relating specifically to a Type C general-law municipality. *Id.* at § 51.051(b). Finally, a Type C general-law municipality may adopt the powers of a Type A general-law municipality. *Id.* at § 51.052. Because Enterprise has not otherwise established that DISH did not have statutory authority to sue as a matter of law, we find that the trial court would have erred in granting summary judgment on this basis.

AUTHORITY TO REGULATE A NUISANCE

As a preliminary observation, Enterprise's second argument fails because, as discussed more fully above, DISH did not seek to regulate the operations of any of the facilities at issue in this proceeding. Enterprise maintains that because its metering station is located within the extraterritorial jurisdiction of the town of Northlake, DISH has no authority to regulate a nuisance not occurring within its territorial boundaries. Without citation to any relevant authority supporting its position, Enterprise relies on

section 217.022 of the Local Government Code which provides in part that the "governing body of a municipality shall prevent to the extent practicable any nuisance *within the limits of the municipality* . . . ." TEX. LOCAL GOV'T CODE ANN. § 217.022 (West 2008).

Enterprise reasons that because the Legislature has not granted municipalities the power to bring a suit with respect to nuisances occurring outside their jurisdictions, then DISH must not have that authority. This statutory provision, however, clearly relates to the regulation or abatement of a nuisance, not the recovery of monetary damages resulting from a nuisance. Here, DISH does not seek to regulate or abate any of Enterprise's operations but, instead, seeks to recover damages allegedly resulting from lost tax revenues occasioned by the diminution in value of its tax base, which it alleges was caused by Appellees. We see no bar to DISH suing Enterprise for damages. Causation and proof of damages suffered by DISH, if any, are matters to be determined by a fact finder. Accordingly, we sustain DISH's sixth issue.

<u>ENTERPRISE'S CROSS-ISSUES</u>

Finally, we address two "cross-issues" presented by Enterprise. By two statements Enterprise designates as "cross-issues," it contends (1) Appellants "failed to respond or direct the trial court to any evidence supporting the elements of their causes of action that were challenged by Enterprise's no-evidence motion for summary judgment" and (2) Appellants waived their complaints as to Enterprise because they

27

failed to raise a general "Malooly" issue[15] challenging every ground upon which the trial court's judgment could have been based.

Enterprise's first contention fails because, as we discussed above, Appellants did present summary judgment evidence in the form of their personal affidavits and the expert report of Wolf Eagle Environmental claiming their damages were caused by harmful substances, noises, odors, and light emanating from Enterprise's activities. While Enterprise maintains that Appellants' summary judgment response did not directly address its no-evidence claims, it certainly raised at least a scintilla of evidence that Appellants were harmed by noise, odors, light, and hazardous chemicals emanating from Appellees' facilities. To the extent that Enterprise contends that it should not be "lumped in" with the other Appellees when it comes to a general allegation of cause, we find the allocation of responsibility among the various Appellees to be a matter laden with fact issues and, as such, one uniquely suited to resolution according to the infinite wisdom of a fact finder.

Enterprise's second contention also fails because Appellants did challenge every ground upon which the trial court could have granted summary judgment.[16] As such, Enterprise's cross-issues are overruled.

---

[15] *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex. 1970) (affirming summary judgment where appellant did not challenge at least one of the grounds raised by appellee in his motion for summary judgment).

[16] Every issue raised in Enterprise's *Traditional and No-Evidence Motion for Summary Judgment* has been addressed and refuted.

RECOVERABLE DAMAGES

Finally, to the extent we have not otherwise addressed the types of damages recoverable in a nuisance or trespass cause of action, we add these additional comments. Damages measured by the present diminution in value of property is an adequate and appropriate remedy for harm to either real or personal property. *City of Tyler*, 962 S.W.2d at 497. Conversely, mental anguish claims based solely on either a negligent trespass or nuisance are not a compensable measure of damages as a matter of law. *Id.*

CONCLUSION

To the extent that Appellants' claims or causes of action can be construed as seeking recovery of monetary damages for prospective injuries, mental anguish, or $1,000 "per day for trespass" or to the extent they seek to abate an alleged nuisance or ongoing trespass, we affirm the trial court's order granting summary judgment. In all other respects, we reverse the trial court's order and we remand this case to the trial court for further proceedings consistent with this opinion.


Patrick A. Pirtle
Justice


29