**AFFIRMED and Opinion Filed January 24, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01555-CV**

**CELERINA RAMIREZ AND RUBEN DELUIS, Appellant**
**V.**
**MARIO SCCAFFETTI AND RUBY LEE SCCAFFETTI, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-14315**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Goldstein
Opinion by Justice Goldstein

This is an appeal from a bench trial adjudicating title to residential real property. The trial court awarded title to the property to appellant Ruben DeLuis and awarded damages to appellees Mario and Ruby Lee Sccaffetti for unjust enrichment. In four issues, appellants challenge the damages award. We affirm. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2.

# BACKGROUND

Mario Sccaffetti is the head pastor of Mundo de Milagro y Fe (the church). Ruby Lee Sccaffetti, Mario's wife, serves the church in various administrative roles.[1] Appellant Ramirez was at all relevant times a congregant of the church. By all accounts, Ramirez was very generous: she made cash donations to the church, often purchased groceries for the Sccaffetti family, and even let them use her credit card for expenses. At issue in the trial below was whether Ramirez also gave the Sccaffettis a house.

The house in question is a single-family residence located in the Glenbrook Meadows subdivision, Garland, Texas. Ramirez was awarded the house in 2011 as a result of a prior divorce. She married appellant DeLuis the same year, but kept title to the house in her name. The Sccaffettis moved into the house in December 2014 under the impression that Ramirez had gifted the house to them. Over the next two years, the Sccaffettis made significant improvements to the house, including both repairs and cosmetic work. In March 2016, Ramirez obtained a loan for $160,000 from Citadel Servicing Corp., secured by a deed of trust on the house. According to the Sccaffettis, appellants informed them of the loan in April or May and demanded the Sccaffettis make the mortgage payments going forward. The Sccaffettis initially refused, but ultimately relented for fear of losing the house. For the following twelve

---

[1] To avoid confusion, we will refer to appellees by their first names.

months, the Sccaffettis paid $1,400 per month via checks made payable to Citadel but delivered to appellants. When the Sccaffettis stopped making payments, appellants paid off the outstanding debt to Citadel. On August 11, 2017, Ramirez deeded the house to DeLuis. The next day, DeLuis sent the Sccaffettis a notice of landlord's intent not to renew.

The Sccaffettis sued Ramirez and DeLuis in October 2017, alleging that the house was a gift and asserting claims for statutory and common law fraud, unjust enrichment, and promissory estoppel. The Sccaffettis also sought declaratory judgment that they acquired title through adverse possession and via an oral gift of real estate. In effect, the Sccaffettis sought title to the house or, alternatively, damages in the aggregate amount of expenditures for improvements and mortgage payments. Appellants entered a general denial and filed counterclaims for breach of contract, fraud, breach of fiduciary duty, and trespass to land, alleging that they allowed the Sccaffettis to move in on an oral promise to repay prior loans, pay rent, and eventually purchase the house.

The case was tried to the court on September 3–4, 2019. At the end of trial, the parties each non-suited some of their claims on the record. The Sccaffettis non-suited their fraud claims and their claim for declaratory judgment on adverse possession. Appellants non-suited all their claims except fraud. The trial court entered final judgment on November 11, 2019. In the judgment, the trial court

declared that there was no oral gift of real estate and the house was to remain titled in DeLuis's name. The trial court awarded the Sccaffettis $79,180 on their unjust-enrichment claim and ordered the Sccaffettis to vacate the house within thirty days of the judgment. The trial court denied all other relief. No party filed a motion seeking findings of fact and conclusions of law. This appeal timely followed.[2]

## DISCUSSION

Appellants raise four issues on appeal and argued collectively: (1) the trial court used the wrong measure of damages for unjust enrichment; (2) there was legally and factually insufficient evidence that appellants were unjustly enriched; (3) there was legally and factually insufficient evidence of the amount of unjust enrichment damages; and (4) the trial court erred in awarding the Sccaffettis damages that were incurred by the church, a non-party.[3] We address each issue in turn.

---

[2] The Sccaffettis filed their notice of appeal on December 10, 2019, and Ramirez and DeLuis filed their notice of cross-appeal on December 23, 2019. *See* TEX. R. APP. P. 26.1. On March 9, 2020, the Sccaffettis filed a motion to dismiss their appeal. We granted the motion, dismissed the Sccaffettis' appeal, and directed the Clerk of the Court to change the style of this appeal to designate Ramirez and DeLuis as appellants and the Sccaffettis as appellees.

[3] Existing legal authority applicable to the facts and the questions we are asked to address must be accurately cited and analyzed. *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). When a party fails to adequately brief a complaint, he waives the issue on appeal. *In re N.E.B.*, 251 S.W.3d 211, 212 (Tex. App.—Dallas 2008, no pet.). Although there is no express rule requiring parties to subdivide their argument to address distinct issues, failure to do so risks waiver. *See, e.g.*, *Cruz v. Van Sickle*, 452 S.W.3d 503, 511 (Tex. App.—Dallas 2014, pet. denied) (concluding that appellant waived issues where argument section "consist[ed] of 69 pages of text with no headings, divisions, or groupings of any kind"). While we were not favored with such a brief, the issues, as set forth in the statement of issues, are sufficiently identified for purposes of final disposition on appeal.

## I.  MEASURE OF DAMAGES

In their first issue, appellants contend the trial court erred by using the wrong measure of damages in the final judgment. They argue that, because the trial court awarded the Sccaffettis damages on their "claims of unjust enrichment" and denied all other relief, the final judgment necessarily excluded damages for promissory estoppel. Appellants thus argue that the Sccaffettis could only be awarded restitution damages, which are measured exclusively by the defendant's gain (i.e., the increase in fair market value of the house due to the improvements), not by the plaintiff's loss (i.e., the cost of improvements).[4] Contending there was no evidence of increase in value, appellants conclude that the Sccaffettis were not entitled to any recovery.[5] The Sccaffettis respond that appellants waived this issue and that, in the alternative, it lacks merit.

We agree that this issue was not properly preserved for appeal. Texas Rule of Appellate Procedure 33.1 establishes the prerequisites for preserving an appellate

---

[4] Although appellants did not cite any relevant Texas cases for this exclusive-remedy argument, the principle was expressed in *Sharp v. Stacy*, 535 S.W.2d 345, 351 (Tex. 1976); *see also Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 425 n.28 (Tex. 2008) (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 10 (2011)); *but see* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 10, cmt. h. (2011) (providing an exception for instances where the owner is responsible for the improver's mistake). Because we conclude that appellants did not preserve their first issue for appeal, we do not reach whether Texas recognizes this exception or whether it applies in this case.

[5] The record reflects some evidence of the enhancement value of the house through the unobjected-to testimony of Robert Garza. On appeal, neither party addresses this evidence. Because we conclude that appellants' first issue was not properly preserved, we do not address whether Garza's testimony is sufficient evidence of enhancement value to support the judgment.

complaint. To preserve a point for appellate review, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity (unless the grounds are apparent from the context), obtain a ruling on the complaint, and comply with the rules of evidence or procedure. TEX. R. APP. P. 33.1. Complaints and arguments on appeal must correspond with the complaint made at the trial court level. *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 651 (Tex. App.—Dallas 2015, no pet.) (citing *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.)). To preserve an error for appeal, a party's argument on appeal must comport with its argument in the trial court. *Id.* (citing *Tate v. Andrews*, 372 S.W.3d 751, 754 (Tex. App.—Dallas 2012, no pet.); *Knapp*, 281 S.W.3d at 170–71). To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 816 (Tex. App.—Dallas 1999, no pet.).

We find nothing in the record that appellants' exclusive-remedy argument was raised in the trial court. During trial, appellants did not object to the exhibits and testimony related to the cost of improvements. When appellants orally moved for judgment on the Sccaffettis' promissory estoppel claim, they argued only that there was no evidence of justifiable reliance. Appellants also did not include the exclusive-

remedy argument in their post-trial brief in support of judgment.[6] The record contains no request for findings of fact and conclusions of law, motion for new trial,[7] or any other post-judgment motion that would apprise the trial court of a discrepancy between the causes of action sustained and the measure of damages awarded. *See Arthur's Garage*, 997 S.W.2d at 816. We conclude that appellants did not apprise the trial court of their argument on appeal that the exclusive measure of damages for unjust enrichment is the enhancement value of the house due to the improvements. *See Blackstone Med.*, 470 S.W.3d at 650–51 (appellant failed to preserve error that the trial court erred in denying directed verdict on measure of damages where appellant's arguments on appeal did not comport with its arguments in the trial court).

We overrule the first issue.

---

[6] Appellants' brief in support of judgment does not assert that the exclusive measure of damages for unjust enrichment is the enhanced value of the property. The brief addresses enhancement value of the property only as it relates to the Sccaffettis' claim for oral gift of real estate, not the claim for unjust enrichment. Conversely, the section of the brief discussing unjust enrichment focuses on the insufficiency of the evidence to support the value of the improvements. This argument addresses the quality of the evidence, but does not raise a challenge to the legal right of recovery. We conclude that appellants' brief in support of judgment failed to apprise the trial court of their exclusive-remedy argument and therefore was not sufficiently specific to preserve that argument for appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A).

[7] The trial court's docket sheet shows that a motion for new trial was filed after the trial court entered final judgment. Because that motion is not in our record, we cannot determine whether the alleged error regarding the correct measure of damages was preserved therein. See *Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 727 (Tex. App.—Dallas 2014, no pet.) (burden is on appellant to see that sufficient record is presented on appeal to show error requiring reversal) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990)).

## II. SUFFICIENCY OF THE EVIDENCE

In their second and third issues, appellants complain that the evidence was factually and legally insufficient to support: (1) the trial court's implied finding that they were unjustly enriched, or (2) the amount of unjust enrichment damages.

### A. Standard of Review

In an appeal from a bench trial, the trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When neither party has requested findings of fact and conclusions of law following a nonjury trial, all fact findings necessary to support the trial court's judgment are implied. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). When the appellate record includes the reporter's and clerk's records, as in this case, implied findings of fact may be challenged for legal sufficiency. *Id.* We will affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

When an appellant challenges the legal sufficiency of an adverse finding on which it did not have the burden of proof at trial, it must demonstrate there is no evidence to support the adverse finding. *Great Am. Lloyds Ins. Co. v. Vines-Herrin Custom Homes, L.L.C.*, 596 S.W.3d 370, 374 (Tex. App.—Dallas 2020, pet. denied).

When reviewing the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions" (internal quotation omitted)). We view the evidence in a light favorable to the judgment, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

In reviewing the factual sufficiency of evidence, we review all the evidence and will set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

In a bench trial, the trial court is the sole judge of the credibility of the witnesses and may believe one witness over another and resolve any conflicts or inconsistencies in the testimony. *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied); *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 917–18 (Tex. App.—Dallas 2008, no pet.). We are not a factfinder and therefore may not pass upon the witnesses' credibility or substitute our judgment for that of

the trial court, even if the evidence would clearly support a different result. *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.).

**B.** **Sufficiency of the Evidence that Appellants Were Unjustly Enriched**

In their second issue, appellants contend that the evidence was legally and factually insufficient to support the trial court's judgment that appellants were unjustly enriched. Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied) (citing *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied)). Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Id.* A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "'Unjust enrichment' characterizes the result or failure to make restitution of benefits received under such circumstances as to give rise to implied or quasi-contract to repay." *Villarreal*, 136 S.W.3d at 270. It has also been said that recovery under unjust enrichment is an equitable right and is not dependent on the existence of a wrong. *Id.*

Here, the Sccaffettis pled that appellants were unjustly enriched because they reneged on their promise to gift the house to the Sccaffettis after the Sccaffettis had "invested thousands of dollars in renovating the property." The Sccaffettis claimed that they would not have made the improvements had they believed they were not the owners of the house. They further pled that appellants "secured and/or passively received" the benefit of the improvements "through fraud, duress or by taking undue advantage" of the Sccaffettis.

At trial, several witnesses testified that during a September 2014 church service, Ramirez stood before the entire congregation and orally pronounced she was giving the house to the Sccaffettis. Witnesses also testified that Ramirez made similar statements in private conversations. Victoria Guerrero, one of the members of the church, testified that in 2014, she went with appellants to the hospital to visit Ruby Lee, who had just given birth to a daughter. Guerrero testified that during that visit, Ramirez said the house was a gift and Ruby Lee could "go home" with her baby. Carolina Valenzuela, another church member, testified that Ramirez told her, as the two were driving past the house, that she had given it to "the pastoral family." Johana Chavarria, a translator at the church, testified that she went with Ramirez and Ruby Lee to pick out a new refrigerator for the house. Chavarria testified that Ramirez offered to pay for the appliance and said, "I want you to pick a refrigerator for your house."

Ramirez denied these accounts and denied making the oral pronouncement in church. She testified that she was allowing the Sccaffettis to live at the house but was not gifting it to them. She further testified she did not stop the Sccaffettis from making improvements because the plan was for the Sccaffettis to eventually buy the house. DeLuis testified that even before the Sccaffettis moved in, the parties had an oral agreement that, once the Sccaffettis had sufficiently built up their credit, they would purchase the house. Regarding the improvements, DeLuis said that he initially offered to fix up the house, which would have cost $10,000. He testified that Mario refused the offer and said he would fix up the house himself. Due to Mario's insistence in doing the work himself, DeLuis offered instead to give the Sccaffettis a credit of $10,000 towards the future purchase price. DeLuis further testified that when he saw the renovations were exceeding that amount, he reminded Mario that the credit he had offered was only $10,000. He said that Mario told him not to worry about it.

DeLuis also testified that the agreement from the outset was that the Sccaffettis would pay rent until they could purchase the house. Although there was no testimony about when the rent payments would begin under this oral agreement, DeLuis and Ramirez introduced a written lease dated March 1, 2015 into evidence. Ramirez testified that she personally witnessed Mario sign the lease. Under the terms of the lease, the Sccaffettis would pay $1,400 per month for a term of one year, after

which the term would automatically extend on a month-to-month basis under the same payment terms unless either party provided a thirty-day notice of termination. Appellants testified that the Sccaffettis made twelve payments under the lease starting in May or June 2016. When the Sccaffettis stopped making payments, DeLuis sent them a notice of non-renewal and began the eviction process.

Mario denied signing the lease and testified that there was never any oral agreement to pay rent and that the house was always a gift. Mario explained that after Ramirez took out a mortgage on the house, appellants told the Sccaffettis they would have to start making $1,400 in mortgage payments. Mario said that he initially refused, but after discussions with his wife, the Sccaffettis agreed to make the payments to avoid losing the house. To support their position that there was no oral agreement for rent, the Sccaffettis introduced into evidence a City of Garland form titled "Statement of Change of Status for Property." The form bears the signatures of Ramirez and Mario, both of which are dated December 23, 2014. There is an 'X' next to the selection that states: "This address is not a rent house. I am the owner, but do not occupy the home."[8] The text that follows states: "I do not charge or collect rent or accept any other form of consideration from the occupant or another on behalf

---

[8] The first option is also marked with an X, but the text is altered. The option states, "I am the owner and occupy the home." Next to that are the words "Date of Occupancy" followed by a blank. The words "I am the owner" are underlined, but the words "and occupy the home" are crossed out. The blank is filled with "NA."

of occupant." Mario testified that this form was required to transfer the utility bills to his name and that Ramirez told him the form would "make sure that [the house] was a gift."

"The principle is well established in equity that a person who in good faith makes improvements upon property owned by another is entitled to compensation therefor." *Wagner & Brown*, 282 S.W.3d at 425; *see also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 10 ("A person who improves the real or personal property of another, acting by mistake, has a claim in restitution as necessary to prevent unjust enrichment."). Because there were no requests for findings of fact and conclusions of law, we must presume the trial court impliedly found that the Sccaffettis made the improvements in good faith. *See Sibley*, 111 S.W.3d at 52. We must therefore consider whether the evidence was legally and factually sufficient to support that finding.

We conclude that it was. Several witnesses testified that Ramirez stated, both publicly and privately, that she already had gifted, or was going to gift, the house to the Sccaffettis. Mario testified that he believed the house was a gift and that Ramirez promised to transfer the title as soon as she saved enough money for the closing costs. Mario testified that he made the improvements because he believed it was his

house. Although Ramirez denied saying the house was a gift,[9] the record indicates that the trial court determined she was not credible. In response to Ramirez's testimony, the trial court stated, "Ms. Ramirez, I don't believe you. Okay. I believe that you are lying to me." The trial court continued, "I've listened to your prior testimony. I watch your body language and I think that you don't understand what an oath is." As the factfinder in this case, the trial court was the sole judge of the credibility of the witnesses was entitled to believe the Sccaffettis' witnesses over Ramirez. *See Shaw*, 251 S.W.3d at 169.

There was also sufficient evidence for the trial court to disbelieve DeLuis's account that the parties had an oral agreement for rent and an eventual purchase. DeLuis's account was in direct conflict with the City of Garland form, signed by Ramirez under oath, stating "this is not a rent house." DeLuis testified that the oral agreement for rent was made before the Sccaffettis moved into the house, with no explanation as to Ramirez's written verification that she would not "charge or collect rent or accept any other form of consideration from the occupant." The verified municipal form does not indicate that this arrangement was temporary, nor was there any evidence that appellants informed the City of Garland as to any change to the arrangement.

---

[9] In denying that the house was a gift, Ramirez testified that she told the Sccaffettis they could live in the house, but not that she was giving it to them for free. She said the details of the parties' agreement was handled by her husband and she was not present for those discussions.

The only other evidence supporting DeLuis's account was the lease. However, there was sufficient evidence for the trial court to conclude that Mario's purported signature on the lease was forged. Mario testified that it was not his signature and he did not know that the lease even existed until the 2017 eviction proceedings. The Sccaffettis directed the trial court's attention to the signature on the lease and Mario's signature on other documents.[10] Although the trial court expressed concern that there was no handwriting expert called to testify,[11] it noted the difference between the signatures. Other evidence also corroborated Mario's testimony that he did not sign the lease. DeLuis testified that he and Ramirez showed the lease agreement to Citadel in connection with the mortgage loan they took out in March 2016. The trial court asked DeLuis whether Citadel "wanted to see [the lease] to make sure you could make the payments," to which DeLuis answered, "That is

---

[10] The Sccaffettis introduced a second copy of the lease agreement that was identical to the one introduced by DeLuis and Ramirez in every way except the initials on each page and the signature on the last page. It is unclear when or where this second copy of the lease originated. The Sccaffettis' counsel objected to the first copy on grounds that it was not produced in discovery. He explained that the first time he heard of the lease was during Ramirez's deposition on March 6, 2019 and that his clients later provided him a copy, which they had obtained from the justice court during the eviction proceedings. The record is not clear whether he was referring to the first or second copy or whether he even knew there were two different copies in existence at the time he made that representation. It appears from the record that when the first copy was introduced at trial, Ruby Lee compared it with a copy she had in her possession and discovered the difference in the signatures. She pointed out the difference to her counsel, who later offered it as further evidence that the lease signature was a forgery. The trial court asked Ruby Lee where she obtained this new copy, and she answered that she got it from her counsel's office. The trial court then asked the Sccaffettis' counsel whether his office had provided that copy to the Sccaffettis, and he responded that he did not know. The trial court noted the problem in the "chain of custody" of the second copy but admitted it for the limited purpose of comparing the signatures.

[11] The Sccaffettis' counsel explained that they had retained a handwriting expert, but the cost quoted by the expert to testify at trial was too high for the Sccaffettis to afford.

correct." Ruby Lee identified the obvious discrepancy that the lease was purportedly signed on March 1, 2015 and provided for rent payments starting on that date, but the evidence was undisputed that the Sccaffettis did not start making the $1,400 monthly payments until May 2016. Further, the undisputed evidence was that the Sccaffettis' checks were made payable to Citadel despite the lease provision requiring payments to be made "payable to" Ramirez. The trial court noted the discrepancy and stated, "this lease number was just to fool the mortgage company, I guess." The trial court was entitled to resolve this evidentiary conflict in the Sccaffettis' favor, even without a handwriting expert. *See Bibbs v. Massey*, 516 S.W.2d 273, 275 (Tex. Civ. App.—Corpus Christi 1974, no writ) (court of appeals not required to determine whether handwriting expert was required where sufficient probative evidence corroborated witness's account that a signature was not genuine).

On this record, we conclude the evidence was legally and factually sufficient to support the trial court's implied findings that: (1) Ramirez promised to gift the house to the Sccaffettis; (2) the parties did not orally agree that the Sccaffettis would pay rent on the house; (3) Mario did not sign the lease agreement[12]; and (4) the

---

[12] In their reply brief, appellants argue that the issue of forgery was not "an ultimate issue of fact that would be implied to support the judgment" because bad faith or evil motives on appellants' part were not relevant to any claim. We disagree. The Sccaffettis pled, under their claim for unjust enrichment, that appellants obtained a benefit from them by fraud, duress, or the taking of an undue advantage. *See Heldenfels Bros.*, 832 S.W.2d 39, 41 (Tex. 1992). At trial, the Sccaffettis sought to prove that they never agreed to pay rent and the house was a gift. Appellants offered the lease to support their position that the Sccaffettis agreed to pay rent and eventually purchase the house. The trial court awarded the Sccaffettis not

Sccaffettis made improvements to the house in good faith. As we explain in more detail below, there was also sufficient evidence that the Sccaffettis paid nearly $80,000 for the improvements, taxes, and mortgage. Because the trial court awarded appellants title to the house, it was equitable to order appellants to pay restitution to the Sccaffettis. *Wagner & Brown*, 282 S.W.3d at 425; *Heldenfels Bros.*, 832 S.W.2d at 41.

Appellants also contend that the evidence was insufficient to support a finding that they were unjustly enriched because the trial court failed to credit them for the time the Sccaffettis lived in the house rent-free. They argue they were entitled to an offset of $40,600 for the twenty-nine months the Sccaffettis paid no rent. Appellants further argue that the trial court should not have awarded $16,800 to the Sccaffettis for the twelve payments of $1,400 because that amount was properly collected as rent. As a result, they argue, the final judgment award of $79,180 should have been reduced by at least $57,400. We reject this argument. The right of offset is an affirmative defense. *Mays v. Bank One, N.A.*, 150 S.W.3d 897, 899 (Tex. App.—Dallas 2004, no pet.). Texas Rule of Civil Procedure 94 provides that a party must "set forth affirmatively" any matter constituting an avoidance or affirmative defense.

---

only the amounts they paid to improve the house, but also the twelve payments of $1,400, which appellants argued below and continue to argue on appeal were actually payments under the lease. On this record, whether Mario signed the lease was a contested issue the trial court was required to resolve in order to award the Sccaffettis restitution in the amount of the mortgage payments.

TEX. R. CIV. P. 94. Regardless of the merits of a party's argument on appeal, the issue of offset is waived if it was not pleaded in the trial court. *See Mays*, 150 S.W.3d at 899 (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 862 (Tex. App.—Fort Worth 2003, pet. denied). Here, appellants entered a general denial and did not plead any affirmative defenses. And although appellants asserted a counterclaim for breach of the lease agreement, they nonsuited that claim at the end of trial. Appellants have therefore waived any right to an offset. *See Mays*, 150 S.W.3d at 899; *Columbia Med.*, 122 S.W.3d at 862.

Even if offset were not waived, the evidence was sufficient for the trial court to conclude that appellants were unjustly enriched despite the lack of rent payments. As we have already explained, the evidence was legally and factually sufficient to support the trial court's implied findings that there was no oral or written rental agreement between the parties. Accordingly, the trial court correctly concluded that appellants were not entitled to either a credit for the payments made or an offset for the payments the Sccaffettis did not make.

We overrule appellants' second issue.

### C.     Sufficiency of the Evidence of Unjust Enrichment Damages

In their third issue, appellants argue that the evidence was legally and factually insufficient to support the amount of damages awarded on the Sccaffettis'

claim for unjust enrichment. A fact-finder has the discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 151 (Tex. App.—Dallas 2012, no pet.) (citing *Mays v. Pierce*, 203 S.W.3d 564, 578 n.20 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). In our sufficiency analysis, we need not recreate the fact-finder's calculations. *See Mays*, 203 S.W.3d at 578 n.20 (citing *Westgate, Ltd. V. State*, 843 S.W.2d 448, 457 (Tex. 1992)). We will affirm the judgment so long as the award is within the range of evidence presented at trial. *See id.*

Here, the trial court awarded the Sccaffettis the exact amount they requested in their brief in support of judgment—$79,180. The Sccaffettis' brief categorized the payments as follows: (1) $16,800 in mortgage payments, (2) $7,100 in property tax payments, and (3) $55,280 in repairs and renovations. Appellants challenge the sufficiency of the evidence for the repairs.[13]

---

[13] Appellants also challenge the amount the Sccaffettis paid for property taxes. At trial, Mario testified that he paid $3,000 for 2016 taxes and $3,500 for 2017 taxes. In their brief in support of judgment, however, the Sccaffettis requested $7,100 in damages for tax payments. That amount was based on Mario's testimony at a prior injunction hearing. Appellants argue that the trial court could not consider the prior testimony unless the transcript of that hearing was admitted into evidence or the Sccaffettis requested the trial court to take judicial notice of the prior testimony, neither of which occurred here. *See Longtin v. Country One Stop, Inc.*, 129 S.W.3d 632, 635–36 (Tex. App.—Dallas 2003, pet. denied). We do reach this argument. As we explain, there was sufficient evidence for the trial court to conclude that the Sccaffettis made $55,280 in payments for improvements to the house. That, plus the undisputed $16,800 in mortgage payments sums to $72,080. Mario's trial testimony supported another $6,500 for tax payments, leaving $600 to reach the total amount awarded by the trial court. That difference, however, is more than supported by other evidence adduced at trial. For example, Mario testified that the Sccaffettis paid $8,000 for the master bathroom to be remodeled. There are also two checks in the record, one to Home Depot for $961.57 and one to Labrado

At trial, Mario testified he hired vendors to do the repairs and renovations, offering as evidence invoices, checks, and live testimony to support the amounts paid. The Sccaffettis offered the following invoices, all but one admitted over no objection, and all but one corroborated by sponsoring witnesses who testified to the work performed: (1) invoice no. 101 from Bella Blue Pools (Bella) for $16,000; (2) invoice no. 8008 from Reyes Flooring (Reyes) for $5,200; (3) invoice no. 121 from Saucedo Plumbing (Saucedo) for $17,670; (4) invoice no. 779 from DBA JR A/C and Heating (DBA) for $2,630; and (5) invoice no. 118 from RRR Constructions (RRR) for $13,780.[14] Mario testified that he paid each of these invoices in full, partly by cash and partly by check, which testimony was again corroborated by the vendor testimony of Bella,[15] DBA, RRR, and Saucedo.

Appellants broadly argue three reasons why we should disregard this evidence. First, appellants contend that the church paid for the repairs, not the

___

Pool service for $500, which were not included in the Sccaffettis' brief in support of judgment. The total range of damages available, therefore, included another $9,461.57. Because the trial court's total award was within the range of evidence presented at trial, we do not reach appellants' argument regarding property taxes. *See Sharifi*, 370 S.W.3d at 151.

[14] On appellants' objection, the trial court excluded the RRR Constructions invoice on grounds that the sponsoring witness, the company owner, did not create the invoice.

[15] The representative of Bella was Maria Mendoza. Mendoza testified that, according to company records, the Sccaffettis paid $6,000 in checks and $10,000 in cash toward the $16,000 invoice. Other than what was reflected in Bella's company records, Mendoza appeared to have no personal knowledge of any relevant facts. Appellants moved to strike her entire testimony, which the trial court granted. The Sccaffettis do not challenge that ruling on appeal. Accordingly, we do not consider Mendoza's testimony in our sufficiency analysis. *See City of Keller*, 168 S.W.3d at 821–28; *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) (disregarding excluded evidence in legal sufficiency analysis).

Sccaffettis, identifying the checks in the record that reflect the church as the account owner. Appellants argue that because the church, a non-party, paid for the repairs, there was no evidence the Sccaffettis personally suffered an injury. We reject this argument. Even assuming that the Sccaffettis were required to show that they paid for the repairs from personal funds to be entitled to restitution for unjust enrichment, an issue we do not decide, there was sufficient evidence that they did. Mario testified that he, personally, paid the vendors. When asked about the form of payment to Bella Blue Pools, for example, Mario testified "I pay some cash and some in check." All twelve checks in the record are from a Wells Fargo account. Ten of the checks list the church as the account holder, while two others list the church and the Sccaffettis as account holders.[16] Ruby Lee testified that neither she nor Mario kept a separate bank account and would sometimes write checks out of the Wells Fargo account for personal expenses when needed. On this record, we conclude the evidence was legally and factually sufficient to support the trial court's implied finding, to the extent it was required to make such a finding, that the Sccaffettis maintained a joint

---

[16] Appellants argue that Check Nos. 8004 and 8005, appear to have been written on a different account because they look different, they are the only checks that include the Sccaffettis as account holders, and the other checks are numbered in the 2000s or 3000s. We note, however, that, unlike the other ten checks, the account numbers on these two checks are redacted. We therefore cannot determine whether these checks are from a separate account, or simply from a different series of checks for the same account. Additionally, there was no evidence offered at trial to contradict Ruby Lee's testimony that the church had only one bank account. To conclude, as appellants suggest, that the church maintained more than one account would require us to speculate about inconclusive evidence and ignore the only probative evidence on point. This we cannot do. *See City of Keller*, 168 S.W.3d at 820 (in legal sufficiency analysis, fact finder cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted).

bank account with the church and paid for the repairs out of their portion of funds in that account.

Appellants next challenge the Sccaffettis' "amorphous cash payments" for the repairs. When asked about the amount of the cash payments, Mario testified that he did not know the exact amount and his "CPA ha[s] all the numbers." Relying on *H.E. Butt Grocery Co. v. Bruner*, 530 S.W.2d 340, 343–44 (Tex. App.—Waco 1975, writ denied), appellants argue we should disregard the cash payments. In *Bruner*, the court concluded that the plaintiff was entitled to a spoliation presumption because the defendant destroyed vital evidence. *Id.* at 343 ("Failure to produce evidence within a party's control raises the presumption that if produced it would operate against him, and every intendment will be in favor of the opposite party."). The presumption does not apply in this case because there is no evidence that the CPA's records were spoliated. *See Brewer v. Dowling*, 862 S.W.2d 156, 160 (Tex. App.— Fort Worth 1993, writ denied) (distinguishing *Bruner* and holding the presumption does not apply where evidence is merely lost). Appellants were also not entitled to the presumption because they did not offer any evidence that the amount the Sccaffettis paid in cash was different than as testified by the Sccaffettis. *See id.* at 159 (noting that the rule from *Bruner* "comes into play only when one party has

introduced evidence harmful to its opponent"). Accordingly, we decline to apply the presumption against the Sccaffettis.[17]

Finally, appellants argue that the invoices from Bella, Saucedo, and RRR were not "legitimate" for various reasons, including that one (Saucedo) lacked statutorily required information,[18] two (Saucedo and RRR) were for work done without a building permit, and three (Saucedo, RRR, and Bella) were prepared months after the work was completed. We are not persuaded by these arguments. Appellants did not raise their statutory-language argument in the trial court and have therefore waived it on appeal. *See* TEX. R. APP. P. 33.1. In any event, appellants fail to adequately explain or provide pertinent authority as to why the failure to include legally required language in an invoice, or to obtain a building permit, precludes recovery of amounts paid. We are similarly unpersuaded by appellants' argument about the timing of the invoices. Mario testified that he asked the vendors for "receipts" showing the amount he paid for the improvements. In response to a direct question from the trial court, he denied that he requested invoices to be prepared for the purpose of trial. Although the trial court stated on the record that there were

---

[17] We also reject appellants' speculative argument that the cash, like the checks, must have been from funds belonging to the church. As both Mario and Ruby Lee testified, the cash they used to pay for the improvements came partly from Mario's salary, which the church paid in cash, and partly from their personal savings.

[18] *See* TEX. OCC. CODE ANN. § 1301.302 (requiring a plumbing invoice to include the name and license number of the responsible master plumber and contact information for the licensing board).

"credibility issues" regarding that testimony, it stated that it would wait to hear from the vendors themselves regarding amounts invoiced and amounts paid. After hearing vendor testimony, the trial court stated that it thought the amount the Sccaffettis paid for improvements was between forty and sixty thousand dollars. The trial court ultimately awarded the Sccaffettis $79,180, including the approximate fifty-five thousand dollars for improvements to the house. The trial court therefore resolved the credibility issues in the Sccaffettis' favor, and we cannot disturb that determination. *See Shaw*, 251 S.W.3d at 169.

We conclude the evidence was legally and factually sufficient to support the amount of damages awarded by the trial court. We overrule appellants' third issue.

## III. SOURCE OF FUNDS

In their fourth issue, appellants argue that the trial court abused its discretion in awarding the Sccaffettis damages that were incurred, if at all, by the church, a non-party. As we explained above, there was sufficient evidence for the trial court to conclude that the Sccaffettis maintained a joint bank account with the church and the amounts they paid for improvements to the house were drawn from their portion of those funds. We therefore overrule appellants' fourth issue.

## CONCLUSION

We conclude appellants failed to preserve for appeal their argument that the exclusive measure of damages for unjust enrichment was an increase in property

value of the house. We further conclude that the evidence was legally and factually sufficient to support the trial court's findings that appellants were unjustly enriched and the amount of unjust enrichment damages was $79,180. Finally, we conclude that the evidence was legally and factually sufficient to support the trial court's implied finding that the Sccaffettis personally paid for the improvements to the house. Accordingly, we affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

191555F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CELERINA RAMIREZ AND
RUBEN DELUIS, Appellants

No. 05-19-01555-CV      V.

MARIO SCCAFFETTI AND RUBY
LEE SCCAFFETTI, Appellees

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-14315.
Opinion delivered by Justice
Goldstein. Chief Justice Burns and
Justice Molberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees MARIO SCCAFFETTI AND RUBY LEE SCCAFFETTI recover their costs of this appeal from appellants CELERINA RAMIREZ AND RUBEN DELUIS.

Judgment entered January 24, 2022.